SANDRA ZELLMAN, Individually and as Executrix of ROBERT ZELLMAN, Deceased, Appellant, v METROPOLITAN TRANSPORTATION AUTHORITY et al., Respondents.

Second Department, November 9, 1981

**APPEARANCES OF COUNSEL**

*Joseph F. Carlino (Tedone & Tedone [Matthew A. Tedone* and *John F. Cordes]* of counsel), for appellant.

*Kelly, Rode, Kelly & Burke (John D. Kelly* and *Shawn P. Kelly* of counsel), for respondents.

**OPINION OF THE COURT**

COHALAN, J.

The plaintiff in this wrongful death and conscious pain and suffering action appeals from a judgment which dismissed the complaint at the close of plaintiff's case and

directed a jury verdict for the defendants. The dismissal was based on the contributory negligence of the deceased (plaintiff's testator) as a matter of law.

The judgment should be reversed and the case remitted to the Supreme Court, Suffolk County, for a trial *de novo,* with costs to abide the event.

The facts show that on April 22, 1970, at about 2:00 P.M., Robert Zellman, the deceased, a local storekeeper, was struck and injured by a Long Island Railroad (LIRR) train at the Straight Path railroad crossing adjacent to the Wyandanch Railroad Station. He died of the injuries four days later.

Straight Path runs north and south at about a 50-degree acute angle (looking east) to the railroad tracks, which at that point run east and west. At the intersection there is one track (at grade) for east and westbound trains.

The decedent, whose store was located on the east side of Straight Path about 150 feet south of the track, was returning to his place of business after buying his lunch at a delicatessen north of the station. At that very moment, a uniformed police officer, one Ronald Williams, was standing in front of Zellman's store investigating an ongoing burglary.[1] Williams' presence was well within the view of the decedent.

At the same time, an eastbound four-car, diesel-powered train was standing in the station approximately 160 feet west of the crossing. Vehicular traffic was also at a standstill due to the lowered crossing gates, each of which extended one-half way across Straight Path. When Zellman reached the crossing, he was observed to be walking in an easterly direction between the north side crossing gate and the north rail. He was struck by the left front of the diesel locomotive at a point east of the easterly tip of the north gate.

One eyewitness (Salvi), whose car was second in line at the north crossing gate, testified that the defendant Keller, who was acting as the fireman and who was seated on the north side of the locomotive at a window, was holding either a magazine or a newspaper in his hand as the train

---

1. An offer of proof with respect to the officer's activity was improperly rejected by the Trial Judge, out of sight and sound of the jury.

got underway. If this were so, he was apparently not paying undivided attention to his duties, and a jury could find negligence of the railroad crew in not observing the scene, nor giving proper warning to Zellman. Although Keller denied reading anything while the train was in motion, he did admit that he had in the cab a newspaper which he was bringing home to his wife to read.

Another eyewitness (Bergami) was seated in an automobile which was stopped at a traffic light about 200 feet south of the crossing. This witness was deposed in Texas, because of his unavailability to attend the trial. In response to a direct question to which no objection was taken at the trial, and which read: "Q. Sir, would you be able to describe the manner in which you saw the pedestrian walking as the train was approaching?", he answered: "A. Well, I had mentioned before that he looked like he was preoccupied." At the same examination, Bergami was asked: "Q. You said before that you heard the whistle simultaneously with the impact; is that correct?", and after some colloquy, he answered: "A. No, I heard the whistle simultaneously with the train movement. The impact took place just a split second later." From this exchange a jury could reasonably infer that the engineer was remiss in delaying the blowing of the whistle.

The defendant Keller, called by plaintiff, testified at one point that the fireman had an emergency brake within hand's reach, and at another that it was the general custom for members of the public to walk across the intersection while the train was in the station, notwithstanding that the guardrails were down for both vehicular and pedestrian traffic.

In addition, the delicatessen owner (Schleider) testified that to his knowledge Zellman had hung a note on his store door "Back in ten minutes", an obvious invitation to an enterprising burglar.

In determining whether questions of fact were presented for jury determination, we are to be guided by the established principles that (1) the plaintiff is not held to as high a degree of proof as where the injured person can himself describe the occurrence (see *Noseworthy v City of New*

*York,* 298 NY 76, 80), and (2) that where the complaint has been dismissed as a matter of law, the evidence adduced at the trial is to be considered by the appellate court in the light most favorable to the plaintiff, who is entitled to the benefit of every favorable inference reasonably to be elicited from the evidence *(Sagorsky v Malyon,* 307 NY 584, 586; *De Wald v Seidenberg,* 297 NY 335, 336-337).

A third axiom is that in a wrongful death action the burden is on the defendant to establish plaintiff's contributory negligence (EPTL 5-4.2), and a fourth that if any possible hypothesis based on the evidence forbids the imputation of fault to the decedent, then as a matter of law, the question is one for the jury (see *Andersen v Bee Line, Inc.,* 1 NY2d 169).

On the question of negligence, a jury could reasonably find that Keller was not paying attention to his duties and that if he had seen Zellman — as he should have — he could have applied the emergency brake which was within easy reach of his hand, and thus have averted the accident.

If apprised of Officer Williams' presence in front of Zellman's store, a jury might reasonably infer that Zellman's attention was diverted in a momentary forgetfulness of danger and may thus have absolved him of contributory negligence. The further fact, as Keller testified, that pedestrians generally disregarded the lowered gates when a train was at a halt in the station, and the Bergami testimony that Zellman appeared preoccupied, presented factual issues for jury determination.

The theory of momentary forgetfulness of danger is still viable in our case law, and has been invoked by our court as recently as 1977 (see *Zaepfel v City of Yonkers,* 56 AD2d 867). There the Trial Justice dismissed the complaint of a nine-year-old boy on the ground of contributory negligence as a matter of law. The youngster, while sleighing on city property, ran into a fence of whose existence he was well aware, but momentarily forgot. "I just didn't notice it" was his explanation (p 868). A new trial was ordered.

In Warren's Negligence (vol 1B, § 11.07, pp 835-836), the theory of forgetfulness of danger is discussed, with cases cited:

"A plaintiff may not be held guilty of contributory negligence because temporarily he forgot the existence of some known danger.[1] In any event, such forgetfulness would not constitute contributory negligence as a matter of law.[2] However, under normal circumstances, forgetfulness of a known danger may be sufficiently negligent as to warrant a jury finding of contributory negligence.[3] It is where some unusual situation exists that the plaintiff's forgetfulness of known danger may be excused; emergencies, hurry, excitement, and facts of that kind might be enough, at least, to warrant a submission of the question to the jury. Thus where a fireman employed by a railroad was watching a mail train approaching, as it was his duty, and his head came in contact with a mail crane, it was held that the question of his contributory negligence was properly submitted to the jury. Here, while he knew of the existence of the danger, his attention was necessarily attracted elsewhere.[4]

---

"1. See 74 ALR2d 950, 'Momentary forgetfulness of danger as contributory negligence,' (1960).

"2. *Schneider* v. *Miecznikowski,* 16 AD2d 177 * * *

"3. *Gross* v. *City of New York*, 24 AD2d 751 * * * *aff'd* 18 NY2d 830 * * *

"4. *Brown* v. *New York Cent. & H. R.R. Co.*, 42 App Div 548 * * * *aff'd* 166 NY 626".

*Schneider v Miecznikowski* (16 AD2d 177) is quite relevant. There the plaintiff owner of an automobile was riding as a passenger while defendant was operating it. The defendant owned a car with a different type of gear shift. He forgot he was not in his own vehicle. In the thought that he was shifting into high gear, he actually shifted into reverse. Plaintiff was injured as a result. Special Term granted plaintiff summary judgment. In reversing the order, the Appellate Division, Fourth Department, noted (p 178): "Momentary forgetfulness is not negligence as a matter of law *(Rugg* v. *State of New York*, 284 App. Div. 179). 'It presents, at most, a question of fact to be determined by the trier of the facts.'" (See, also, *Dollard v Roberts,* 55 Hun 607, affd 130 NY 269.)

In *Fiero v New York Cent. & Hudson Riv. R.R. Co.* (71 Hun 213, affd *sub nom. Furot v New York Cent. & Hudson Riv. R.R. Co.,* 143 NY 674), a conductor was told there were only three cars on the train. He saw a reflection of what he thought was a fourth car and, while walking towards it, was thrown to the ground and injured. There was no chain across the rear of the third car to prevent his fall. It was held that his conduct was not contributory negligence as a matter of law.

On the general questions of negligence, contributory negligence and last clear chance, the case of *Cruz v Long Is. R.R. Co.* (28 AD2d 282) bears some factual resemblance to this case, except that there was no eyewitness to the accident. Cruz was walking south at the Maspeth Avenue railroad intersection in Queens County, on his way to his place of business south of the tracks. He was presumably struck and killed by the overhanging grab bar of a "light engine", i.e., one drawing no cars. The engine was proceeding west in reverse on a westbound track in a cluster of tracks. On another track a long train of freight cars was proceeding eastwardly. As noted in the opinion of the Appellate Division, First Department, which reversed a judgment dismissing the complaint at the close of the evidence as a matter of law and which ordered a new trial (p 284):[2] "It could be found that, as the decedent approached or stood near the tracks, his attention was drawn to another train, a long freight train, which was then crossing Maspeth Avenue on the eastbound track. (The eastbound track was located south of and adjacent to the westbound track.)" Later, in the same opinion, after discussing the theories of negligence and contributory negligence, and theorizing as to what conclusions — in favor of the plaintiff administratrix — a jury could reasonably arrive at if given the opportunity, the court then discussed the theory of "last clear chance". It said (p 286): "In any event, if the jury did find that the decedent had unreasonably placed himself in a position of danger, it could also have found that the defendant's fireman should have ob-

---

2. On the retrial the jury was instructed on the questions of (1) wrongful death and (2) last clear chance. Its verdict — for the plaintiff administratrix — awarded damages for the wrongful death cause of action. The judgment was affirmed (32 AD2d 740) and on appeal to the Court of Appeals was further affirmed (26 NY2d 927).

served the decedent's peril and averted the accident. The evidence was such that the 'last clear chance doctrine' could be properly applied."

Here, if the jury chose to believe that Keller was reading instead of looking down the track, last clear chance might have been called into play.

For the reasons stated herein, we hold that questions of fact were presented for jury determination, and that a new trial is required.

GULOTTA, J. (concurring). Although otherwise in agreement with my brethren in the majority, I cannot accept their final assertion that had the jury herein ultimately determined that the plaintiff's deceased was contributorily negligent in the happening of this unfortunate accident, a verdict in favor of the plaintiff might nevertheless have been predicated on the theory of "last clear chance". It is quite apparent from the record in this case that the crew of the defendants' train did not become aware of the fact that their train had struck anyone until the end of their run on the day of the accident, i.e., 7:47 P.M. As Judge GABRIELLI has recently written for the Court of Appeals, "for the doctrine of last clear chance to apply, the negligent party must have *known* that the about-to-be injured party was in a perilous situation, from which he could not extricate himself" *(Dominguez v Manhattan & Bronx Surface Tr. Operating Auth.*, 46 NY2d 528, 534; emphasis supplied; see, also, PJI 2:60). Accordingly, mere inattention by the fireman (Keller) would not have been sufficient.

Although *Dominguez* also teaches that circumstantial evidence may form the basis for the conclusion that such knowledge existed, the instant case is notable for the absence of any such proof. Thus, the fact that the train whistle may have blown a split second before the locomotive began crossing Straight Path and struck the decedent provides no basis for a further inference that the fireman saw the decedent on the track, but deferred taking any action until it was too late. Indeed, such reasoning is almost classic in heaping inference upon inference to achieve a desired result. The first inference — that the fireman saw the decedent — is drawn from evidence that

the whistle blew just prior to the accident, and the second inference — that although the fireman saw the decedent in time to warn him, he delayed the whistle blast until too late — is piled directly upon the first and has no basis in the record other than sheer speculation. Furthermore, the decedent's negligence (if found) continued until the moment of impact, and he was never in a situation from which he could not extricate himself. On this record, he either walked into the train or walked along the railroad tracks with his back to the train. "The plaintiff may not by proceeding heedlessly, place upon the defendant the sole responsibility for [an] accident occurring through the continuing negligence of both" (see *Hernandez v Brooklyn & Queens Tr. Corp.*, 284 NY 535, 539).

LAZER, J. P., MANGANO and GIBBONS, JJ., concur with COHALAN, J.; GULOTTA, J., concurs in the result, with an opinion.

Judgment of the Supreme Court, Suffolk County, dated December 11, 1979, reversed, on the law, and new trial granted, with costs to abide the event. No findings of fact have been presented for review.