■ In the Matter of ROBIN C. FASANO, Appellant, v STATE OF NEW YORK, Respondent. (Claim No. 65164.)—In a claim to recover damages for personal injuries, etc., claimant appeals from a judgment of the Court of Claims (McCabe, J.), dated March 9, 1984, which, after a nonjury trial on the issue of liability only, granted the State's motion to dismiss the claim.

Judgment reversed, on the law and the facts, without costs or disbursements, motion to dismiss the claim denied, claimant is awarded judgment against the State on the issue of liability to the extent of 50% thereof, the remaining 50% of

liability is apportioned to claimant, and matter remitted to the Court of Claims for further proceedings consistent herewith.

On March 17, 1979, at approximately 1:00 A.M., claimant was driving home on the Palisades Interstate Parkway after spending the evening with her girlfriend at a local discotheque. According to claimant, she had not consumed any alcoholic beverages during the evening, and her car was in proper working order. While traveling southbound on the parkway, claimant's vehicle left the roadway just south of the New York State Thruway intersection and eventually overturned in the center mall of the highway. Claimant, who was the only occupant of the vehicle, sustained serious injuries in the accident including severe cranial trauma which caused retrograde and posttraumatic amnesia. As a result, claimant lacks recollection of any of the events which transpired after she left the discotheque and prior to the accident.

At trial, however, claimant maintained that the accident occurred when her vehicle became trapped in a ditch immediately abutting the left lane of the parkway thereby causing her to lose control of her vehicle. The evidence adduced at trial established that the ditch in question was approximately 110 feet in length, 12 inches wide and 8 inches deep and had existed for several months prior to the accident. There was no curbing on the left shoulder on the portion of the roadway in question, nor were there any barricades or lights surrounding the ditch. Claimant, who had traveled this same route approximately four times a week over a two-year period, testified that she had observed construction vehicles in the area of the ditch for several months prior to the accident. Several other witnesses also testified that repair crews had been seen in the area.

Although there were no eyewitnesses to the events which transpired shortly before the accident, claimant offered the testimony of one Francis Leale, who had been traveling southbound in the parkway immediately ahead of claimant's vehicle. Leale testified that when his vehicle was approximately one tenth of a mile south of the accident site, he looked in his rear-view mirror and observed "a dust cloud with lights flashing". In Leale's estimation, the dust cloud was located in the middle of the rutted left shoulder of the highway's southbound lanes. When Leale returned to the area, he observed claimant's vehicle overturned on the center mall of the highway.

Several hours after the accident, Police Officer Vincent

Lavarna, who had responded to the accident earlier that morning, conducted an investigation of the accident site. Based on his postincident observations, the officer concluded that the accident occurred when the claimant's vehicle, "travelling south, ran off into a ditch along [the] left side of [the] roadway, re-entered and crossed both lanes, ran up onto [the] right shoulder, striking [the] guide rail, re-entered and crossed both lanes again in [the] other direction and entered [the] center mall, turned over and came to rest on its roof facing a northerly direction". The officer also noted that the road conditions at the time of the accident were dry, the road grade was straight and level, and the weather conditions were cloudy.

An expert on highway design and maintenance testified that the existence of the rutted roadway shoulder for weeks or months constituted a departure from proper and accepted highway maintenance procedures. If the condition could not be repaired immediately, the expert noted that recommended procedure would have been to place warning traffic-control devices, such as barricades and lights, around the rutted area. Finally, the expert opined that based on Leale's testimony as well as the investigating officer's postincident observations, claimant's vehicle, in all probability, left the roadway in the vicinity of the ditch on the left shoulder.

At the close of claimant's case, the State moved to dismiss the claim on the basis that claimant failed to prove a prima facie case of negligence. The court reserved decision and the State rested without offering any evidence on its behalf.

The trial court subsequently rendered a memorandum decision in which it granted the State's motion to dismiss the claim. Although the court acknowledged that an amnesiac claimant is held to a lower standard of proof than a claimant who could testify to the events *(see, Noseworthy v City of New York,* 298 NY 76), it determined that claimant failed to present sufficient evidence to establish that she drove off the left shoulder of the roadway into the rutted area. In view of its conclusion, the trial court did not reach the issue of whether the State was negligent in failing to maintain the roadway. We disagree with the trial court's determination and accordingly reverse.

It is well established that the Appellate Division's power to review findings of fact rendered after a nonjury trial is not limited to whether the findings are supported by the credible weight of the evidence *(see, Northern Westchester Professional Park Assoc. v Town of Bedford,* 60 NY2d 492, 499; *Jacques v*

*Sears, Roebuck & Co.,* 30 NY2d 466, 471; *O'Connor v Papertsian,* 309 NY 465, 471-472). If the credible evidence in the record indicates that a different finding from that of the trial court is not unreasonable, this court must weigh the relative probative force of conflicting testimony as well as conflicting inferences which may be drawn therefrom *(see, Spano v Perini Corp.,* 25 NY2d 11; *Shipman v Words of Power Missionary Enters.,* 54 AD2d 1052, 1053). Following its assessment of the testimony, this court may render the judgment it finds warranted by the facts, taking into account that in a close case, the Trial Judge has the advantage of viewing the witnesses *(see, Northern Westchester Professional Park Assoc. v Town of Bedford,* 60 NY2d 492, 499, *supra).*

As indicated previously, where, as in the case at bar, a claimant has proven by clear and convincing evidence that he is suffering from amnesia as a result of injuries sustained in an accident allegedly caused by the defendant's negligence, that claimant will not be held to as high a degree of proof as in a case where the injured party is able to testify to the occurrence *(see, Noseworthy v City of New York,* 298 NY 76, 80, *supra; Schechter v Klanfer,* 28 NY2d 228, 233; *Costa v Hicks,* 98 AD2d 137, 146; PJI 1:62). This principle of law, commonly known as the *Noseworthy* doctrine, is based on a judicial recognition of the fact that the preferential treatment normally accorded to decedents should similarly be accorded to amnesiacs whose inability to testify was directly caused by the defendant's alleged negligence *(see, Schechter v Klanfer,* 28 NY2d 228, 232-233, *supra).*

Judged by the aforesaid standards, we conclude that claimant presented sufficient evidence to establish a prima facie case of negligence. In the first instance, it is a general principle that "[w]hen the State or one of its governmental subdivisions undertakes to provide a paved strip or shoulder alongside a roadway, it must maintain the shoulder in a reasonably safe condition for foreseeable uses, including its use resulting from a driver's negligence. Injuries arising from a traveler's use of an improperly maintained roadway shoulder may be compensable through application of general principles of negligence and comparative negligence" *(Bottalico v State of New York,* 59 NY2d 302, 304-305). Herein, the evidence amply established that the State was negligent in failing to repair the rutted condition in the roadway. According to the testimony of claimant's expert, which was not controverted by the State, the existence of the hazardous road condition over an extended period of time constituted a departure from proper

and accepted highway maintenance procedures. Furthermore, even assuming that the State did not have actual notice of the defective road condition, it had at the very least constructive notice thereof due to the extended period of time that the defect was visible and the fact that rehabilitation work was being done in the immediate area prior to the accident (see, Blake v City of Albany, 48 NY2d 875; Rinaldi v State of New York, 49 AD2d 361, 363-364).

With respect to causation, there is also ample circumstantial evidence in the record from which it can reasonably be inferred that the defective road condition was a substantial contributing factor to the accident. Leale's testimony, in conjunction with the police officer's postincident observation of the accident scene, clearly supports a conclusion that claimant's vehicle exited the roadway on the left shoulder in the area of the subject ditch. On this point, we note that the trial court failed to give sufficient probative weight to the investigating officer's report. The officer had 13½ years' experience in investigating vehicular accidents and making determinations as to their causality. Moreover, he conducted an extensive and detailed analysis of the instant accident scene. Thus, the officer was well qualified to render an expert opinion as to the cause of claimant's accident and his opinion was entitled to great weight (see, Blake v City of Albany, 48 NY2d 875, supra; Larsen v Vigliarolo Bros., 77 AD2d 562).

Although we conclude that claimant proved a prima facie case of negligence against the State based on the existence of the hazardous road condition, we also conclude that claimant was not without fault in causing the accident. Claimant admittedly had prior notice of the hazardous condition near the left shoulder of the road and thus could have taken necessary steps to avoid it. Moreover, claimant was careless in permitting her vehicle to stray from the paved highway into the ditch. On this point, it is necessary to emphasize that the road conditions were dry, and the pavement was straight and level. Based on our assessment of the evidence, we conclude that an appropriate apportionment of the liability for the underlying accident is 50% for each party. Gibbons, J. P., Thompson, Weinstein and Lawrence, JJ., concur.