■ KATHLEEN T. CLANCY, as Administratrix of the Estate of MARTIN CLANCY, JR., Deceased, Appellant, v COUNTY OF NASSAU et al., Respondents.—In an action to recover damages, *inter alia,* for wrongful death, the plaintiff appeals from a judgment of the Supreme Court, Nassau County (Robbins, J.), dated March 24, 1987, which, after a nonjury trial on the issue of liability, is in favor of the defendants and against her.

Ordered that the judgment is reversed, on the facts, judgment is awarded to the plaintiff on the issue of liability, and the case is remitted to the Supreme Court, Nassau County, for a trial on the issue of damages only, before a Judge other than the Trial Judge.

Following a nonjury trial, the trial court dismissed the plaintiff's complaint, holding that the defendant Wagner did not negligently cause the death of the deceased and that the actions of the deceased were the proximate cause of his own death. We find this determination to be contrary to the weight of the credible evidence and so reverse the decision and enter judgment for the plaintiff on the issue of liability.

Martin Clancy, Jr. died as a result of four gunshot wounds inflicted by the defendant Detective William Wagner of the Nassau County Police Department on February 6, 1983, at about 1:30 A.M., during an altercation which occurred in a shopping center parking lot located on Route 25A in East Setauket, New York. Clancy had been out drinking with

friends that night, while the defendant Wagner, who was in plain clothes, and his wife had just left a restaurant after having a few drinks. The altercation had started when the defendant Wagner, who had peered into Clancy's automobile to investigate the loud noises and shouts being made by two of Clancy's friends who were in the car, was pushed from behind by Clancy. The defendant Wagner pushed back, and then pulled out his gun. Although the defendant Wagner claims he told Clancy at that time that he was "a cop", he never showed his badge, nor did anyone else hear the statement. In any event, at that point, Clancy and one of his friends, a John Pizzitola, ran to a nearby club to get help, telling the manager that there was a "crazy man down the street with a gun". Thereafter, Clancy, who had returned to the car ahead of the others, tackled the defendant Wagner from behind as the defendant Wagner, with his weapon drawn, was holding the third of Clancy's friends, a James Kelly, against the vehicle. Clancy and the defendant Wagner fell to the ground with Clancy on top, and a few seconds later the defendant Wagner fired his weapon four times. Clancy died shortly thereafter from the gunshot wounds.

Where a trial has been held without a jury, the scope of the appellate court's factual review is not limited solely to whether the verdict is against the weight of the credible evidence, but the court may also weigh the relative probative force of conflicting inferences that may be drawn from the testimony and grant the judgment which it finds is warranted (see, Northern Westchester Professional Park Assocs. v Town of Bedford, 60 NY2d 492; Matter of Fasano v State of New York, 113 AD2d 885), taking into account that the trier of fact was able to observe the witnesses (Matter of Fasano v State of New York, supra; Janowitz Bros. Venture v 25-30 120th St. Queens Corp., 75 AD2d 203).

On review of the evidence presented at the trial, we find that the defendant Wagner's actions, through his negligence in the handling of the situation which developed, his failure to use proper police procedure, and his hasty and unwarranted resort to deadly force, were the proximate cause of the death of the deceased. We do not find from the evidence that it could be said that Clancy knew at the time of the second attack that the defendant Wagner was a police officer. Several witnesses testified that Clancy described the defendant Wagner as a crazy man with a gun. This was essentially corroborated by a defense witness who testified that as he drove his car into the parking lot, an unidentified young man came up to him and

told him to "keep going, the guy's got a gun". Moreover, the evidence shows that the defendant Wagner, who was in plain clothes, failed to clearly indicate his status as a police officer in the first instance. The inference made by the Trial Judge that Clancy knew the defendant Wagner was a police officer merely because Clancy had told the manager of the club that the man had a gun is not a reasonable one.

The defendant Wagner further compounded the situation when he attempted to arrest Kelly, who had been in the back seat of the car throughout the first argument, when in fact Kelly, judging from the defendant Wagner's own testimony, did not do anything to warrant such an intrusion. The defendant Wagner's actions at this point indicate that he had lost objectivity and had engaged in reckless and careless conduct. That Clancy's second altercation with the defendant Wagner was an attempt to rescue his friend Kelly who was being held at gunpoint by one who he thought was "a crazy man" with a gun, is clearly supported by the evidence and commonsense inferences flowing therefrom. Inasmuch as the defendant Wagner's negligence and reckless conduct led to Clancy's mistaken belief that he was not a police officer, the subsequent events cannot be regarded as remote.

Further, the finding by the trial court that the defendant Wagner was in imminent peril of his life because Clancy was choking him was incorrect because there was no such testimony to this effect at the trial. In fact, it is upon this aspect of the evidence that we find that the defendant Wagner was most unreliable. At trial, the defendant Wagner did not testify that Clancy was choking him; rather he claimed that Clancy was banging his head on the pavement. However, not only was he unsure whether Clancy had him by the shoulders, or by his sweater; there was also no evidence in the hospital records to suggest that the defendant Wagner had suffered any serious head injuries. In addition, the autopsy report's indication that the deceased had suffered a gunshot wound to his right hand further refutes the defendant Wagner's story that he was being choked at the time. Moreover, the extremely short period of time within which the shots were heard after Clancy and the defendant Wagner fell to the ground, taken together with the fact that the deceased was unarmed, does not support the finding that the defendant Wagner feared being "mortally wounded" or was in a position of "imminent peril". In these circumstances, we find that the force used was unreasonable and stemmed from a situation

brought about by the defendant Wagner's recklessness and negligence.

There was expert testimony as to the regulation requirement that police officers, off duty and in plain clothes, carry their weapons. This, together with the other circumstances of the case, establishes that, in shooting Clancy, the defendant Wagner was acting in the course of his employment. Accordingly, the County of Nassau is vicariously liable under the doctrine of respondeat superior.

Having granted the defendants' motion, the trial court did not find it necessary to complete the trial on the issue of damages. Since we reverse and grant judgment to the plaintiff on the issue of liability, the case is remitted for a trial on the issue of damages only. Mollen, P. J., Lawrence, Weinstein and Balletta, JJ., concur.