■ PATRICIA HANNA, Individually and as Administratrix of the Estate of KENNETH E. HANNA, Deceased, Appellant, v STATE OF NEW YORK, Respondent. (Claim No. 70092.)—Kane, J. P. Appeal from a judgment in favor of the State, entered March 17, 1988, upon a decision of the Court of Claims (Hanifin, J.).

Claimant's decedent was killed on October 28, 1983 when he was in an accident while a passenger in a 1983 Nissan Sentra station wagon automobile being driven by Peter Borowski, who had owned the vehicle for 1½ months. The accident occurred at about 10:30 P.M. as Borowski was proceeding north on State Route 17, a four-lane highway separated by a grass median, near the Village of Monticello in Sullivan County. Decedent was in the passenger seat in front and Borowski's son was in the back seat. The highway was clear and dry and unlighted. At the time of the accident, the vehicle was being buffeted by extremely high winds and, in the course of maneuvering to avoid other traffic, it left the paved portion of the

road, flipped over several times and eventually landed in an upright position in the grassy median. At some point during the accident, decedent was thrown from the vehicle. He was pronounced dead at the scene. Thereafter, claimant commenced this action alleging that the accident was proximately caused by the State's negligence in failing to maintain a portion of the shoulder of the highway. Specifically, claimant argued that there was an excessive drop-off between the left travel lane and the surface of the shoulder. This drop-off was an allegedly nine-inch unpaved area to the immediate left of the paved surface.

At the trial on the issue of liability, it was claimant's contention that after being hit by the high winds, the vehicle swerved and the efforts to compensate resulted in the two left side wheels going over the shoulder of the road, causing Borowski to lose control due to the excessive nine-inch drop-off. Claimant argued that the drop-off affected Borowski's ability to maneuver and caused the vehicle to overturn onto the grassy median. For its part, the State contended that the vehicle began to turn over on the highway before it ever reached the shoulder and therefore the alleged drop-off was not the proximate cause of the accident. The Court of Claims accepted the State's argument and dismissed the claim. Claimant has appealed.

Claimant basically argues that the determination by the Court of Claims that the accident was not proximately caused by the drop-off was against the weight of the evidence. We agree. However, anterior to the question of proximate cause is the question of whether an act or omission on the State's part constitutes negligence (see, Saulpaugh v State of New York, 132 AD2d 781, 782; Koester v State of New York, 90 AD2d 357, 361). Here, the evidence demonstrated that a portion of the shoulder area in question included an unpaved drop-off of 7 to 12 inches. There was expert testimony to the effect that a drop-off of such depth created a hazardous condition. The Court of Claims found constructive notice of the existence of this hazardous condition on the part of the State, and, as a result, its negligence is established (see, Bottalico v State of New York, 59 NY2d 302).

On the issue of proximate cause, Borowski testified that a strong gust of wind resulted in his car being forced off the road. He stated that the left-hand side of the vehicle went off the road into the drop-off, causing the steering wheel to "lock" and that it was impossible for him to control the car. He said he attempted to steer out of what "felt like * * * a ditch", and

that the vehicle did not begin to flip over before it hit the shoulder. Moreover, the police accident report contains the following statement: "Driver states: We were blown off left side of road and *couldn't get back on* and overturned" (emphasis supplied). At trial, two police officers who investigated the accident also testified. One prepared a report which essentially supported Borowski's version of the accident. This officer, Deputy Sheriff Paul Pratti, also testified that he observed tire marks on the edge of the drop-off, but none on the surface of the highway. He also prepared a diagram of the scene of the accident from measurements and observations made at the scene shortly after the accident. This diagram was received in evidence and is before this court as an exhibit. It delineates the depth, width, length and angle of the erosion ditch and, in the opinion of Pratti based upon the physical findings, the path of the Borowski vehicle from the time it left the highway to where it finally came to rest. The total distance measured 246 feet, with two areas of ground disturbance on the grassy median along this straight line, one at 60 feet, 7 inches from an indicated point of departure at approximately a 45-degree angle from the shoulder, and a second area 95 feet in distance from the first, with the vehicle coming to rest approximately 37 feet beyond the second disturbance area. Decedent was found 31 feet, 4 inches behind the vehicle and toward the westbound lane of the highway. The second officer testified that there were scuff marks on the insides of the two left tires. However, in contradiction to this testimony, the State offered the testimony of three eyewitnesses not involved in the accident.

The first witness testified that she was driving a car in the right-hand lane some distance ahead of the Borowski vehicle when it caught up with her, nearly touching her vehicle. She stated that she took evasive action to her right as the other vehicle veered into her lane and then, through her rearview mirror, saw the Borowski vehicle make a sharp left turn and began rolling over and that "it appeared that [the car] was rolling on the pavement". However, her answers to subsequent questions produced more equivocal answers resulting in a final conclusion that she really did not know whether prior to the accident the wheels of the Borowski vehicle were on or off the paved portion of the highway. The other two eyewitnesses, husband and wife, were in a vehicle approximately six car lengths behind the Borowski vehicle. The husband driver testified that he saw the Borowski vehicle lose control, spin to the left and then roll over, but did not know exactly where in

the travel lane the car was when it rolled over other than that it was *after* the wind forced it over to the left. His wife testified that she saw the Borowski car on the travel portion of the highway when it started to roll over and that it rolled over three times and landed upright on the shoulder of the road. In answer to the next question, she stated that the car rolled over three times and ended up off the road, but she could not otherwise identify where it came to rest. However, she did testify that the Borowski vehicle left the highway at approximately a 45-degree angle and that although she was unsure how it rolled, the right part of the car must have been higher than the left part.

The Court of Claims found the testimony of the three eyewitnesses persuasive and concluded that the existence of the drop-off was not a proximate cause of the accident. It also noted that Borowski did not include in his statement immediately after the accident that he "felt the left side of his car drop" and "the steering wheel seemed to be locked to him", as he testified at trial, and to which the court observed that "logic dictates that that information would have been set forth in his statement". The court then proceeded to point out discrepancies in the preliminary diagram of the accident scene made that night by Pratti and the more comprehensive diagram prepared thereafter. It then analyzed the physical facts and matters of time and distance in Borowski's testimony and concluded that since his vehicle was out of control when it left the highway, "it is difficult to believe that Mr. Borowski could have regained control after his driver's side wheels dropped to the shoulder so that he could have attempted to remount the travel lane in such a short period of time". As to the tire marks observed by Pratti along the side of the highway at the scene of the drop-off, the Court of Claims accepted the State's contention that the marks were nothing more than asphalt or oil marks or that the marks could have been caused by another vehicle that did not overturn. It then concluded that "it is clear the marks were not made by the Borowski car". No comment was made with regard to the second officer's two observations of the scuff marks on the inside of the left-hand tires of the six-week-old Borowski vehicle.

It is true that since this case was not tried before a jury, the Court of Claims resolution on questions of credibility is "peculiarly within its domain and should not be disturbed by the appellate court if adequately supported in the record" *(Raynor v State of New York,* 98 AD2d 865, 866; *see, Pape v State of New York,* 90 AD2d 904, 905). However, it is also the rule

that: " 'If it appears on all the credible evidence that a different finding or a finding different from that of the court is not unreasonable, then this court must weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from such testimony * * *. It is within the power of this court to grant the judgment which upon the evidence should have been granted by the trial court' " *(Koester v State of New York,* 90 AD2d 357, 363-364, *supra,* quoting *Shipman v Words of Power Missionary Enters.,* 54 AD2d 1052, 1053). Accordingly, our analysis of the credible evidence compels a different result from that of the Court of Claims.

In our view, the physical facts weigh heavily in favor of claimant. The absence of any scrapes and debris on the surface of the highway and the lack of the showing of any scrapings and striations on the metal surface of the Borowski vehicle strongly suggest that it did not overturn on the highway surface. Moreover, the presence of the tire marks on the pavement edge of the drop-off and the scuff marks on the inside of the tires of the Borowski vehicle corroborate his testimony regarding the attempt to get back onto the highway. Additionally, the findings and conclusions of the officers who investigated the accident and who, by experience, were well qualified to render opinions as to the cause of the accident, should be given great weight *(see, Matter of Fasano v State of New York,* 113 AD2d 885, 889). In evaluating the testimony of the eyewitnesses, it must be remembered that their observations occurred in the dark of night, on a windswept highway over a period of a very few seconds. Under such circumstances, their testimony must be carefully scrutinized. Additionally, a careful analysis can lead to the conclusion that their testimony can be construed to support much of Borowski's description of the accident, particularly with regard to the movements of his vehicle prior to the accident. We also note that before the investigating officers had an opportunity to return to the scene in daylight, the State, in the course of an existing maintenance program, replaced the shoulder of the highway at the point where it is alleged the Borowski vehicle left the highway and brought it up to grade with the paved portion of the roadway.

Thus, since the photographs taken that night without adequate light were unusable, there is nothing else to rely upon other than the testimony of Borowski and the investigating officers regarding the depth, length and direction of the drop-off and the erosion ditch that they described. Since this is an

action brought by the representative of a decedent's estate, claimant is not held to as high a degree of proof as where the injured person himself can describe the occurrence *(see, Noseworthy v City of New York,* 298 NY 76, 80; *see, e.g., Learch v Bartell,* 122 AD2d 596; *Zellman v Metropolitan Transp. Auth.,* 83 AD2d 144, 146). Even without applying this lesser standard of proof, based upon the entire record, we conclude that claimant met her burden of proof and the State should be cast in liability for the happening of this accident.

Judgment reversed, on the facts, with costs, claim reinstated, judgment directed to be entered in favor of claimant on the issue of liability and matter remitted to the Court of Claims for trial on the issue of damages. Kane, J. P., Casey, Mikoll, Yesawich, Jr., and Mercure, JJ., concur.