■ MARISELA SEE, Respondent, v RAFAEL B. ARIAS, Appellant. [619 NYS2d 610] —In an action to recover damages for medical malpractice, the defendant appeals from an order of the Supreme Court, Nassau County (Kohn, J.), entered October 20, 1992, which, after a hearing, (1) granted the plaintiff's motion to dismiss the defendant's affirmative defense asserting the Statute of Limitations as a bar to the action, and (2) denied his cross motion for summary judgment dismissing the complaint on that ground.

Ordered that the order is affirmed, with costs, for reasons stated by Justice Kohn in his decision at the Supreme Court. O'Brien, Copertino and Florio, JJ., concur.

Balletta, J. P., dissents and votes to reverse the order, on the law, to deny the plaintiff's motion, to grant the defendant's motion, and to dismiss the complaint, with the following memorandum: I disagree with the majority and vote to reverse the order appealed from. The plaintiff's motion to strike the affirmative defense of the Statute of Limitations should be denied, and the defendant's cross motion to dismiss the complaint on the ground that the Statute of Limitations had expired should be granted.

The instant medical malpractice action arises out of the prenatal care provided by the defendant doctor to the plaintiff in 1987. The plaintiff's first visit to the defendant occurred in July 1987 when she was two and one-half months pregnant, and her last visit occurred on October 14, 1987. The expected date of delivery was mid-February 1988. On October 28, 1987,

however, the plaintiff was admitted to Elmhurst General Hospital suffering from preeclampsia and an intracerebral hematoma. That same day, the plaintiff delivered a nonviable fetus by way of a caesarian section. Two days later, the plaintiff suffered a stroke and became comatose which necessitated a left craniotomy to evacuate the hematoma. The plaintiff was discharged from the hospital on November 27, 1987, and she returned to work in March 1988.

The plaintiff commenced the instant action by the service of a summons and complaint on or about November 7, 1990. In his verified answer, the defendant asserted as a second affirmative defense that the action was barred by the applicable Statute of Limitations. Subsequently, the plaintiff moved to strike the second affirmative defense, and the defendant cross-moved to dismiss the complaint on the ground that the Statute of Limitations had run. After a hearing, the Supreme Court found that the plaintiff had been incapacitated by reason of "insanity" within the meaning of the tolling provisions of CPLR 208, and held that the plaintiff's action had thereby been timely commenced.

While the findings of the hearing court should generally be granted great deference, I find that such deference is not warranted under the circumstances presented here. Where, as here, it appears from the record that the decision of the hearing court is not supported by the objective credible evidence, the appellate court must weigh the evidence and the inferences that may be drawn therefrom and grant the relief that should have been granted by the hearing court (see, *Vizzari v State of New York,* 184 AD2d 564; *Lefton v Freedman,* 163 AD2d 360; *Hanna v State of New York,* 152 AD2d 881).

CPLR 208 in general provides for a tolling of the applicable Statute of Limitations in those instances where a person, who might otherwise be entitled to commence an action, "is under a disability because of * * * insanity at the time the cause of action accrues". The term "insanity" is not defined by the statute; however, the Court of Appeals has held "that the Legislature meant to extend the toll for insanity to only those individuals who are unable to protect their legal rights because of an over-all inability to function in society" (*McCarthy v Volkswagen of Am.,* 55 NY2d 543, 548; *see also, Matter of Cerami v City of Rochester School Dist.,* 82 NY2d 809, 812; *Yannon v RCA Corp.,* 131 AD2d 843, 845).

The Court of Appeals has also observed that, in general,

"tolling provisions should not readily be given an expansive interpretation tending to undermine the basic purposes behind the Statutes of Limitation" and that, in particular, the toll for insanity under CPLR 208 is "to be narrowly interpreted" (sse, McCarthy v Volkswagen of Am., supra; see also, Matter of Cerami v City of Rochester School Dist., supra; Eisenbach v Metropolitan Transp. Auth., 62 NY2d 973, 975).

In the instant case, the hearing court's determination that the plaintiff was incapacitated within the meaning of the statute appears to rest primarily upon the opinion of the plaintiff's expert, Dr. Frederick L. Gannon, as augmented by the testimony of the plaintiff and her sister as to the plaintiff's mental condition during the period from March 1988 to June 1991. However, in my view, Dr. Gannon's opinion as to the plaintiff's condition during that period is unsupported by any objective evidence and, therefore, fails to provide a proper basis upon which to toll the Statute of Limitations.

The record contains no objective medical evidence of any adverse findings regarding the plaintiff's physical and/or mental status between the time of her discharge from Elmhurst General Hospital at the end of November 1987 and a neuropsychological report prepared in the fall of 1991. Thus, it appears that, in forming his opinion, Dr. Gannon assumed, without any other evidence, that the plaintiff's condition was either the same or worse than that stated in the neuro-psychological report. Such an assumption would be clearly erroneous, since the neuro-psychological report covered an evaluation of the plaintiff that occurred between June 1991 and November 1991, a period that was already beyond the applicable two and one-half year limitations period and nearly a year after she had commenced this action (see, CPLR 214-a). Moreover, the report itself does not purport to render an opinion as to the plaintiff's abilities for the period from November 1987 to June 1991.

Furthermore, Dr. Gannon's testimony is unsupported by, and, in fact, completely ignores, the documentary evidence provided by the plaintiff's work records and evaluations during the period from March 1988 to June 1991. The plaintiff's employment records show that the plaintiff was neurologically cleared to return to work on February 16, 1988, and that she, in fact, did so in March of that year. Significantly, they also show that sometime in the first half of 1991, the plaintiff initiated a grievance in which she sought compensation for working out of title in a lab assistant capacity. The record shows that the plaintiff " 'OT"ed ER-STAT specimens, centri-

fuged them, separated them and assured that the specimens were given to the critical care area for analyses. In addition, she answered the telephone, gave results to the nursing stations, doctors and directed inquiries to the appropriate technical supervisor". Those same records also contain a letter, signed by the plaintiff's coworkers, attesting to her having performed those duties. Further, she was awarded compensation at a higher pay rate for the period of April 1, 1991, to June 30, 1991.

In addition, according to the plaintiff's work evaluations for the period from April 1987 to April 1991, she properly performed the vast majority of the tasks associated with her position and three different supervisors rated her work performance as being satisfactory. Contrary to the plaintiff's testimony, she did receive some computer training on the job. Finally, the plaintiff's termination notice shows that she was discharged for budgetary reasons and explicitly states that her discharge was not intended to reflect on her job performance.

Thus, the plaintiff's employment records not only showed unequivocally that the plaintiff's work performance during that period was satisfactory, but they also unequivocally demonstrated her ability to protect her financial and other interests during that time. The testimony relied upon by the court in making its determination—that of the plaintiff's expert, the plaintiff, and her sister—failed to address this objective evidence except in a conclusory fashion.

It should be noted that Dr. Gannon conceded that the plaintiff had an attorney-client relationship with a lawyer in early 1988, although, in his opinion, she was unable to maintain that relationship. However, the record shows that on November 10, 1987, while she was still in the hospital, the plaintiff signed an authorization (which was notarized) for the defendant to release his medical records to her attorneys.

In conclusion, it is my opinion that the plaintiff's medical and employment records conclusively establish that for the period from February 1988 to the commencement of this suit in November 1990 the plaintiff was able to function in society and protect her interests. The plaintiff failed to properly rebut or explain them. Therefore, the hearing court erred in finding that the plaintiff had adequately demonstrated that she had "an overall inability to function in society" and was entitled to the toll provided by CPLR 208.

Since the plaintiff's cause of action accrued no later than October 28, 1987, and she was medically cleared to return to

work on February 16, 1988, she had to commence her action no later than August 1990. Having failed to do so, the plaintiff's complaint must be dismissed on Statute of Limitations grounds.