■ In the Matter of TANYA McBRIDE, Respondent, v COUNTY OF WESTCHESTER, Appellant, et al., Respondents. [622 NYS2d 100] —In a proceeding pursuant to General Municipal Law § 50-e for leave to serve a late notice of claim, the defendant County of Westchester appeals from a judgment of the Supreme Court, Westchester County (Wood, J.), dated September 24, 1992, which, after a hearing, granted the petition.

Ordered that the judgment is reversed, on the facts, and the petition is dismissed, without costs or disbursements.

On September 21, 1981, the petitioner, who was then 15 years old and living with her mother, was taken to the emergency room of White Plains Hospital. She was diagnosed

as possibly suffering from a seizure disorder and was released from the hospital the next day.

The petitioner was seen by a pediatric neurologist, Dr. Robert Wolff, on September 25, 1981. She was placed on phenobarbital in accordance with what one defense expert asserts was "accepted medical practice in 1981".

On October 14, 1981, the petitioner was admitted to the Westchester County Medical Center. She was initially continued on phenobarbital. As her condition worsened, however, a decision was made to "rule out * * * seven possible causes". On October 23, 1981, the phenobarbital was discontinued, and replaced with dilantin.

The petitioner eventually developed "Stevens-Johnson Syndrome", a condition which, according to one of the petitioner's experts, is "frequently associated with the administration of * * * Phenobarbital and Dilantin". A defense expert, by way of contrast, described this disorder as "an extremely rare idiosyncratic reaction to medications and other stimuli, which is not in any way related to the quantity of the instigating factor ingested by the patient". This expert asserted that "Stevens-Johnson Syndrome is a rare and catastrophic consequence much like an anaphylactic reaction to a bee sting or a penicillin injection [which] cannot be predicted in advance or avoided by administering a smaller dosage of the medication which triggered the response". As a result of this condition, the petitioner became blind, and suffered skin lesions and subsequent scarring.

The petitioner left the hospital in 1982. The present proceeding for leave to serve a late notice of claim was commenced on June 1, 1990. After a hearing, the Supreme Court held that the time within which the petitioner was obligated to bring this proceeding had been suspended by operation of the "insanity" toll (see, CPLR 208). We find, as a matter of fact, that the Supreme Court's conclusion that the petitioner continuously, for a period of approximately eight years, was unable to "function in society" (McCarthy v Volkswagen of Am., 55 NY2d 543, 548-549) is against the weight of the evidence, and we therefore reverse.

The weight of the evidence in this case establishes that the petitioner was generally able to manage her own finances, could handle daily financial transactions, and could pay her rent, cook, clean, go shopping, and travel by bus. Although she did not move into her own apartment until December of 1990 (at the age of 24), she had lived an essentially independent,

non-institutionalized life while at a special residence at various times from 1988 to 1990. She completed what amounts to a high school education, and, in 1986, was considered to be fluent in braille. She had aspirations to attend college, and might have done so had she not had a daughter in 1987. She was in fact accepted to Queensborough Community College.

The petitioner was aware of the existence of lawyers, and of the existence of a potential medical malpractice claim. In fact, the records show that between the ages of 18 and 23 she consulted several attorneys and was informed that the Statute of Limitations had run. She also consulted an attorney in connection with a notice of eviction that she had received.

Most importantly, the petitioner's own psychiatrist repeatedly evaluated her as being capable of functioning in society by assigning her a global assessment function score of 80. The doctor's later explanation that he did "not utilize the number the way they say that it is supposed to be done" is, as a matter of fact, lacking in credulity.

In *McCarthy v Volkswagen of Am. (supra)*, the Court of Appeals held that the "insanity" toll applied only to those who "are unable to protect their legal rights because of an over-all inability to function in society" (55 NY2d, at 548). The Court announced a test which depends less on the proper medical classification of the state of the claimant's mental health (normal, neurotic, psychotic or, as in this case, "borderline"), and more on a matter of pragmatic assessment of whether the claimant can manage his or her personal affairs *(see also, Matter of Cerami v City of Rochester School Dist.,* 82 NY2d 809; *Matter of Mazzilli v City of New York,* 115 AD2d 604; *Eisenbach v Metropolitan Transp. Auth.,* 97 AD2d 808, *affd* 62 NY2d 973; *See v Arias,* 209 AD2d 503; *Anonymous v Anonymous,* 154 Misc 2d 46, 51; *Dumas v Agency for Child Dev.,* 569 F Supp 831; *Graboi v Kibel,* 432 F Supp 572).

In the present case, we must be careful to distinguish between those difficulties which the petitioner has encountered in her life as the result of blindness, a physical disability, and those which are attributable instead to an actual psychological or psychiatric condition. It is only the presence of an overall inability to function which is actually attributable to a mental rather than a physical condition which may properly serve as the predicate for application of the insanity toll *(see, Eisenbach v Metropolitan Transp. Auth., supra).* The petitioner failed to meet her burden of proving that a psychological disorder caused her to experience an overall inability to function in society.

For those reasons, the judgment appealed from must be reversed. Bracken, J. P., Lawrence, Santucci and Goldstein, JJ., concur.