JOHN WIESNER, JR., an Infant, by JOHN WIESNER, Guardian ad Litem, Respondent, *v.* CITY OF ALBANY, Appellant.

Third Department, June 22, 1928.

George A. Reilly, Corporation Counsel [Charles J. Duncan, Assistant Corporation Counsel, of counsel], for the appellant.

Tobin, Wiswall, Walton & Wood [Frank L. Wiswall of counsel], for the respondent.

DAVIS, J.   On April 28, 1924, the plaintiff, then seven years of age, residing in Albany, was taken ill.  It subsequently developed that he was suffering from typhoid fever, which it is claimed not only caused a long period of severe illness but left his health permanently impaired in certain respects.   In this action brought to recover damages it is claimed that the disease had its inception in unwholesome water furnished by the city, and this condition arose through the negligence of those in charge of the water system in failing to purify the water delivered to consumers, and that the authorities neglected to give warning, although they had notice that dangers existed.

The admitted facts and the verdict of the jury establish that the

city water supply is taken from the Hudson river, a highly polluted stream, receiving above the intake of the water system the sewage of cities and villages with an aggregate population of upwards of 130,000. Recognizing the patent dangers existing in waters thus contaminated, the authorities of the city have established an elaborate system of filtration and the introduction of chlorine into the water for the purpose of destroying any germs that passed through the filters. After chlorination the water goes into what is called a " pure water " or " clear water " well. From this well the water is conducted through a four-foot conduit 8,000 feet long to the the pumping station at Quackenbush street, and is there distributed through the city mains. This conduit consisted of a thin iron shell partly incased in concrete. For the greater part of its distance it is under the bed of the old Erie canal. At the time in question it had been in use for twenty years or more, and its walls had become rusted and broken so that there were holes therein, of which the city had notice. The water flowed through it by gravity so that there was no internal pressure, but the holes permitted external waters to seep into the pipe. There is evidence that the waters remaining in the old Erie canal basin were polluted. There is further evidence that during the early part of April the waters in the Hudson river were very high and overflowed its banks, causing polluted water to enter into the Erie canal below which this main conduit ran.

The result was early discovered. Beginning on April seventh the water was tested at the State Laboratory by and under the supervision of Dr. Wachter, a chemist in the Division of Laboratories and Research of the State Department of Health. These tests were made from the tap which was on the same system as that furnishing water to plaintiff's family. On nearly every day between the seventh and the twenty-third of April, colon bacilli were found in increasing numbers, indicating some definite source of pollution not eliminated by the filtration. About this time there was a sudden increase in gastro-intestinal diseases in the city. The officials in charge of the water department had notice of the defective condition of the conduit, the sudden pollution of the water, and of the outbreak of diseases traceable to impure water, but the warnings were ignored. It was a time for prompt and decisive action. There were two possible sources of contamination — one by impure water passing the filters into the well; the other by introduction of polluted water into the conduit. The exercise of vigilance would have led to discovery of the dangerous condition, and reasonable diligence would have provided the remedy. It was possible by

greater chlorination before the water went into the clear water well to eliminate all dangerous bacilli which had passed the filter; and there was a chlorination plant at the Quackenbush street pumping station which would have removed the new pollution occurring in the conduit, but this was not put in use, at least during the first ten days in April. Common prudence would have suggested a notice to citizens that the water had become polluted, and a recommendation that all water intended for human consumption should be boiled. But no preventive measures were taken until an epidemic had broken out.

The presence of colon bacilli in water indicates contamination from human sources. Many types are harmless in the sense that they do not furnish the origin of disease. The typhoid bacilli (scientifically known as " B-typhosus ") are the well-recognized cause of typhoid, fever. While they are difficult of isolation they belong to the colon group, and the presence of colon bacilli in water indicates that there is grave danger that the typhoid bacilli are also present; and this becomes a practical certainty when there is an outbreak of typhoid fever, not directly traceable to other sources of infection.

During April there were two cases of typhoid. In May immediately following there were eighty-three cases of local origin. It was incumbent on the plaintiff to identify the origin of his disease with water polluted through the negligence of the defendant. Of course, owing to the fact that many people are immune and the typhoid germs are microscopic in size, the method of infection cannot be determined by direct proof, but evidence of the source of infection must be circumstantial. To insist that the plaintiff must establish that the infection came from the city water by positive proof would be to require an impossibility. It is sufficient if it is shown by the best evidence available that the bacilli were introduced into his system by means of the city water, so that the jury may by reasonable inference reach a conclusion to that effect. This is not speculation, but a process of logical deduction. (*Forbes* v. *City of Jamestown*, 212 App. Div. 332, 335; 217 id. 714.) If the plaintiff is able to establish facts from which it can be said with reasonable certainty that the direct cause of injury was the one for which the defendant was liable, a more stringent rule will not be applied to his case and the jury will be permitted to say that they are satisfied with the proof made, and to determine therefrom that the source of infection was the polluted water. (*Stubbs* v. *City of Rochester*, 226 N. Y. 516, 526.)

The plaintiff gave proof excluding other sources of infection. The defendant's counsel in argument merely suggests that there

are other possible sources, but there was no sufficient proof on its part of their presence or of the probability that such causes intervened to furnish the origin of the plaintiff's disease. The epidemic at this particular time including such a large number of cases would, under the circumstances shown, indicate a common origin. It was a fair question of fact for the jury. The evidence supports and justifies the verdict that those performing duties so closely related to the public health were negligent in failing to exercise reasonable and commensurate care in providing wholesome water. (*Canavan* v. *City of Mechanicville*, 229 N. Y. 473, 477.) The questions of fact were submitted to the jury with careful instructions which limited the issues in a manner favorable to the defendant.

The credibility of the witnesses called as experts and the weight and sufficiency of their evidence were questions for the jury. The order of proof in establishing facts was a matter resting in the discretion of the court. (*Place* v. *Minster*, 65 N. Y. 89, 105; *Downing* v. *De Klyn*, 1 E. D. Smith, 563; *Marks* v. *King*, 67 Barb. 225; affd., 64 N. Y. 628; *Jarvis* v. *Metropolitan Street R. Co.*, 65 App. Div. 490.) No other questions argued here merit discussion.

The judgment and order should be affirmed, with costs.

Van Kirk, P. J., Hinman, Whitmyer and Hill, JJ., concur.

Judgment and order affirmed, with costs.