Conway, Ch. J.
On Friday, December 8, 1950, at about 6:40 p.m., a bus of the corporate defendant, Bee Line, Inc., driven by the individual defendant, Matzen, collided with the sedan of Alfred Andersen on Merrick Road between Brookside and Juanita Avenues in Freeport, Long Island. Andersen died in the hospital 10 days later, without ever regaining consciousness.
Thereafter this action was brought by plaintiff, as administratrix of Andersen’s estate, to recover for the alleged wrongful death and conscious pain and suffering of the decedent, caused by the alleged negligence of Matzen in the operation of the bus. At the close of all the evidence the Trial Judge dismissed plaintiff’s cause of action for conscious pain and suffering on the ground that decedent never regained consciousness. Plaintiff does not contest that ruling. The jury returned a verdict in favor of plaintiff on the cause of action for wrongful death. The Appellate Division has reversed, upon the law alone, holding that no view of the evidence establishes a prima facie case of negligence by defendants causally connected with the collision. The sole issue in the case, therefore, is whether plaintiff made out a prima facie case in the wrongful death suit. In determining that question in favor of plaintiff we have been guided by the principles (1) that in a death case a plaintiff is not held to as high a degree of proof of the cause of action as where an injured plaintiff can himself describe the occurrence (Noseworthy v. City of New York, 298 N. Y. 76, 80; Cole v. Swagler, 308 N. Y. 325), and (2) that where the complaint has been dismissed, the evidence adduced at the trial is to be considered in the aspect most favorable to plaintiff and plaintiff is entitled to the benefit of every favorable inference which can reasonably be drawn from the evidence (Sagorsky v. Malyon, 307 N. Y. 584, 586; De Wald v. Seidenberg, 297 N. Y. 335, 336-337).
Merrick Road is a macadam road about 30 feet wide, divided in the center by a white line. It runs generally east and west, but just before it reaches Juanita Avenue, the scene of the accident, it curves sharply to the right for eastbound traffic. The bus was traveling in an easterly direction, had passed Brookside Avenue and was approaching Juanita Avenue on the curve to the right *173 when the accident occurred. The decedent was operating his car, an old model Dodge, in a westerly direction. At the time of the collision it was dark and the street lights were lighted. The night was clear and the pavement dry.
The individual defendant testified that he operated the bus around the curve in question at approximately 20 to 25 miles per hour with all the lights lighted. He had driven 25 feet past Brook-side Avenue, which intersects Merrick Road on the north at the sharp curve, when he saw the headlights of Andersen’s approaching car, which at that moment was in its proper lane. Matzen had driven another 25 feet when Andersen’s car suddenly swung over onto the eastbound lane and headed directly for defendant’s oncoming bus. Matzen estimated Andersen’s speed to be “ fifty or better ”. Matzen stated that he immediately applied his brakes and that at the point of collision he had reduced the speed of his bus to about 8 to 10 miles per hour, while Andersen had not slowed his car at all. Matzen testified that his bus “ didn’t change direction at all ’ ’ after the accident and that he had never straddled the white line on Merrick Road in all the years he had been driving. The front part of the Dodge, except the right fender, was struck by the bus on the left portion of the front of the bus. Under the impact the Dodge turned in a northwesterly direction. After the impact, the bus continued forward with its brakes on, according to Matzen, for a distance of about 10 feet. On cross-examination Matzen admitted that one of the photographic exhibits indicated that the Dodge had been pushed back about 29 feet after the impact.
Police Officer Pavlicin testified that the distance from the rear of the bus, after the accident, to Brookside Avenue, was 96 feet, 4 inches.
Manifestly, if that was all the evidence in the ease, we would be compelled to affirm the dismissal of the complaint for failure to prove negligence on the part of defendants. However, such is not the fact.
Gilbert R. Guesno testified that his house was located south of Merrick Road on the east side of Brookside Avenue and was about 280 feet from the southeast corner of Merrick Road and Brookside Avenue. Just before the accident he was on his way to a gas station located on the south side of Merrick Road to buy a package of cigarettes. He was walking along a path on the west side of Brookside Avenue and when he was about 20 feet from Merrick Road he saw. the defendant’s bus coming around the *174 curve headed east. He estimated that the bus was traveling at a speed of between 40 and 45 miles an hour and said that the bus was straddling the white center line by about a foot. At that time the bus was about 150 feet west of where he was standing and about 300 feet from the point of collision. He was then at a point about 10 feet from Brookside Avenue. After the bus passed him he heard a loud crash and saw that the bus had stopped beyond the bus stop but he did not see any other car at that time. He went over to where the bus had stopped and then saw the other car. He did not see the actual collision.
It cannot be disputed that the jurymen — the sole judges of credibility — were free to reject all or part of the testimony of Matzen, an interested witness, and to accept that of Guesno, a disinterested witness.
Guesno testified that just before the collision he saw the bus approaching Brookside Avenue about 150 feet west thereof, straddling the white center line, traveling at 40 or 45 miles an hour and that it was traveling at that same speed when it passed Brookside Avenue. The speed limit in Freeport is 30 miles an hour. Accepting as true Guesno’s testimony and accepting as true the testimony of Officer Pavlicin that the distance from Brookside Avenue to the point of collision was about 96 feet, the collision must have occurred less than 2 seconds after the bus passed Brookside Avenue or about 4 seconds after Guesno observed it straddling the white line. It seems to us that, in view of the short period of time elapsing between the time the bus was observed traveling at a rate in excess of the lawful speed limit and partially on the wrong side of the white center fine, a jury could reasonably draw the inference that the bus continued in its unlawful course and struck the decedent’s car while the bus was on the wrong side of the road or, by being on the wrong side of the road just before the impact, defendant Matzen created such an emergency situation that Matzen was responsible for the decedent’s swerving onto the wrong side of the road in an effort to extricate himself from the situation. One traveling to the left of the center of the road in the direction in which he is traveling at an excessive rate of speed, who has a collision with a car approaching from the opposite direction which is on the side of the road where it has a right to travel, may properly be held guilty of negligence proximately causing the collision. The same is true, of course, where one creates an emergency situation.
*175 The photographs taken after the accident which show the bus to be in its own lane do not establish, as a m,atter of law, that the bus was in its own lane at the moment of collision. The jury had before it Matzen’s testimony indicating that after impact the bus pushed the car back about 29 feet. If the jury determined that the bus was moving at a rate of from 40 to 45 miles per hour at the time of collision, it seems to us it could have properly concluded that the car was pushed a greater distance and that the bus driver, while bringing his bus to a stop, turned back into his own lane. There were no skidmarks from the bus.
Since the opinion of the Appellate Division is referred to in its order and it declares that ‘ ‘ A new trial would not be granted on the facts * * * ”, we conclude that the facts were affirmed by the Appellate Division and that the reversal was upon the law alone (Civ. Prac. Act, §§ 602, 607). Under such circumstances there is no purpose to be served by remitting the matter to the Appellate Division and we are obligated to render a final determination in favor of the plaintiff.
The judgment appealed from should be reversed, with costs in this court and in the Appellate Division, and the judgment of the Trial Term reinstated.