ANGELINA J. CARPINO, as Administratrix of the Estate of THOMAS J. BALDWIN, Deceased, Appellant, v GEORGE P. BAKER et al., as Trustees of PENN CENTRAL TRANSPORTATION COMPANY, Respondents.

First Department, January 30, 1979

### APPEARANCES OF COUNSEL

*Burton D. Pomerantz* of counsel *(Morton & Pomerantz,* attorneys), for appellant.

*Robert M. Peet* for respondents.

### OPINION OF THE COURT

FEIN, J.

Plaintiff appeals from a judgment granting defendants' motion to dismiss the complaint following a jury trial in this action to recover damages for the wrongful death and pain and suffering of decedent, who was struck by a train owned and operated by defendants on December 19, 1972 at 5:50 P.M. in the vicinity of 241st Street, in The Bronx. The four-car train was a southbound, "deadhead express", bound for Grand Central Station, after having discharged all passengers at the New Rochelle station. The accident occurred approximately five miles from the station. After both sides had rested, the trial court dismissed the complaint, finding that plaintiff had

failed to prove a prima facie case. The Trial Justice concluded that, as a matter of law, the evidence did not establish any negligence in the operation of the train. The court further found that decedent was contributorily negligent, also as a matter of law, observing in its opinion that the deceased had violated section 83 of the Railroad Law, which prohibits walking along or on a roadbed track, except where it crosses a street or highway. We disagree with the decision rendered by the trial court and with its disposition of factual matters which should have been left to the jury as the trier of the facts.

Decedent, Thomas Baldwin, was 18½ years of age at the time of the accident. He left surviving a widow, age 19, and a daughter 18 months of age. As a result of the accident, he sustained multiple injuries, including a depressed fracture of the skull with severe brain contusions, a subdural hematoma, a fracture of the right femur and a fracture of the right carpal bone, all of which resulted in his death four days after the accident.

The transcript of the examination before trial of defendants' engineer, William Allen, the only witness to the accident, was offered in evidence and subsequently read to the jury. He testified therein that the train, equipped with a headlight beam which projected at least 500 feet ahead, was traveling about 15 miles per hour when he observed a youth some 50 feet south of the train standing 6 to 10 feet west of the track. Allen sounded the train's whistle, whereupon the youth waved. Allen then observed decedent about 10 feet behind the other youth, about 10 feet west of the track "crouched toward the track". According to Allen, decedent "made a dash", "ran" toward the track when the train was about 35 feet away. Allen put the train "in emergency" by letting go of the control handle, the effect of which was to slow down the train by shutting off power. The cab was also equipped with a hand-operated brake located to the right of the engineer, which Allen did not use. The train came to a complete stop within two or three car lengths, one car past the point where decedent's body was located. At the moment of impact the train was traveling 15 miles per hour and decedent was just about at "the edge of the track", "on the ties".

Somewhat contradictory was a written statement made by Allen on the day of the accident, wherein he reported that when first observed, 40 feet away, decedent was standing

behind the first youth "on the edge of the track". Despite the apparent inconsistency, the trial court found the statement to be "consistent" with the engineer's testimony at the examination before trial. Overlooked by the court was the fact that the statement could have been considered by the jury to discredit Allen's deposition testimony that the deceased "made a dash" or "ran" from a crouched position toward the track. The trial court inappropriately concluded that the testimony of the engineer at the deposition had "not been discredited or rebutted".

We find that the Trial Justice, in disposing of the action, improperly took the case from the jury. The factual issues and the weight and sufficiency of the engineer's testimony were matters for the triers of the facts. The contradictions in the engineer's recollection of the accident, bearing on his credibility, were for the jury to consider. However tenuous, this being a death action, where slight evidence of liability is sufficient, the issue was for the jury. In ruling upon the issue as a matter of law, the court in effect usurped the function of the jury.

Also overlooked was the testimony of plaintiff's expert who opined that the train was traveling at about 35 miles per hour, a speed greater than that reported by Allen. The expert, a mechanical engineer, concluded that the engineer did not apply the brakes, based in part upon Allen's version of the events that the train continued at the same speed when it hit decedent as it had been going when Allen first saw him. The expert also testified that the train would have stopped at a much shorter distance than 280 feet, as the engineer indicated, had the train been proceeding at the rate of speed testified to and had the brakes been applied as stated by the engineer. The weight to be accorded the expert's testimony was a matter for the jury, not the court, as are the issues raised by defendants relating to the relative value of that testimony. (Wiesner v City of Albany, 224 App Div 239, affd 250 NY 551.)

The trial court noted the appropriate standard to be applied in death actions under which a plaintiff in such action is not held to as high a degree of proof as plaintiffs in personal injury actions. (Noseworthy v City of New York, 298 NY 76; Andersen v Bee Line, 1 NY2d 169; Cruz v Long Is. R. R. Co., 28 AD2d 282.) However, we are in agreement that the Trial Justice did not consider the evidence adduced in a light

favorable to plaintiff, as required. Those and other cases entitle plaintiff in a death action to the benefit of every favorable inference which can be reasonably drawn from the evidence in determining whether a prima facie case has been made. The rule applies notwithstanding the fact that there is an eyewitness to the occurrence (see *Swensson v New York, Albany, Desp. Co.,* 309 NY 497, 502-503; *Schechter v Klanfer,* 28 NY2d 228, 231-232).

Here, the trial court passed upon factual matters and issues of credibility in such a manner as to nullify the *Noseworthy* (298 NY 76, *supra)* principle. On this record, the case clearly warranted submission to the jury, both as to defendants' negligence and as to any contributory negligence on the part of decedent. The trial court's finding that decedent was contributorily negligent was predicated in part upon a factual finding that the deceased had been walking along the roadbed in violation of section 83 of the Railroad Law. There was credible evidence, however, to the contrary. Although defendants assert that decedent ran across the track in front of the oncoming train, whether or not this in fact occurred was a matter to be determined by the jury as trier of the facts. The dismissal also precluded any consideration as to whether or not decedent was attempting to cross in front of the train and whether he had sufficient time to do so. This issue is properly raised in light of the testimony by decedent's sister-in-law that she had lived in the area for 27 years and had observed people use this point to cross over the track for the past 19 years. Allen also admitted that at times in the past he had encountered people passing over the track at this location. Nevertheless, the Trial Justice apparently overlooked this testimony in finding as a matter of law that decedent was contributorily negligent in walking along the roadbed. Under the circumstances, the witness' undisputed testimony should not have been rejected as incredible as a matter of law. The burden was on the defendants to establish decedent's contributory negligence.

Where the proof adduced at trial demonstrates that the public has used a particular point to cross over railroad tracks, the acquiescence of the railroad may create a license so as to impose upon the carrier to all persons so crossing a duty to exercise reasonable care *(Lamphear v New York Cent. & Hudson Riv. R. R. Co.,* 194 NY 172; *Swift v Staten Is. R. T. R. R. Co.,* 123 NY 645). Moreover, although violation of the

statutory provision relied upon by the trial court is negligence per se, there is a factual issue as to whether the statute is at all applicable here. The statute has been held to imply or to recognize "the right of a railway company, by invitation or long continued acquiescence, to create a crossing over the railway tracks which the public may use as a public way even though technically not a street or highway." *(Zambardi v South Brooklyn Ry. Co.,* 281 NY 516, 523; see, also, *Danna v Staten Is. R. T. Ry. Co.,* 252 App Div 776, affd 277 NY 714.) Even assuming without deciding that there was a violation of the statute, there remains unanswered whether the violation was a proximate cause of the accident. This is also a factual issue to be submitted to and decided by the jury as trier of the facts.

The facts here are strikingly similar to those in *Noseworthy v City of New York* (298 NY 76, *supra)* and thus required that the ultimate disposition of the case be made by the jury. In *Noseworthy,* plaintiff's intestate had somehow gotten down from the subway platform to the tracks and was struck by defendant's train. There was no testimony as to how decedent, who died a few hours after the accident, had gotten onto the tracks, nor whether he was conscious or unconscious. The only eyewitness was defendant's motorman, who testified that he saw nothing in the way of the train until the body became visible on the tracks about 10 feet away. He immediately applied his brakes and completed an emergency stop within 15 feet. At that point, the wheels of the first car had already passed over decedent's body. The station was well lighted and the length of the platform established that the train had traveled more than 400 feet on a straight, level track within the station before the accident. On this factual basis, the Court of Appeals concluded *(Noseworthy, supra,* p 79): "All this, we think, made a jury question as to whether or not defendant's motorman was negligent in failing to see decedent until the train was so close that disaster was inevitable (see *Clarke v. City of New York,* 295 N. Y. 861)." Under the *Noseworthy* principle the evidence here was sufficient to require submission of the case to the jury.

The refusal of the trial court to afford plaintiff's attorney the requested opportunity to argue in opposition to defendants' motion to dismiss was improper. Counsel is entitled to a reasonable opportunity to make a record. The court should

have entertained argument by both sides before rendering a determination.

Accordingly, the judgment, Supreme Court, Bronx County (SPECTOR, J.), entered February 24, 1978, should be reversed, on the law, with costs and disbursements, and the matter remanded for a new trial.

MURPHY, P. J., LUPIANO, SILVERMAN and EVANS, JJ., concur.

Judgment, Supreme Court, Bronx County entered on February 24, 1978, unanimously reversed, on the law, vacated, and the matter remanded for a new trial. Appellant shall recover of respondents $75 costs and disbursements of this appeal.