**Dominick RASPENTE, Plaintiff–Appellant,**

v.

**NATIONAL RAILROAD PASSENGER CORP., a.k.a. Amtrak; John Springer, Defendants–Appellees.**

**No. 658, Docket 96–7692.**

United States Court of Appeals, Second Circuit.

Argued Dec. 18, 1996.

Decided April 2, 1997.

Martin Diennor, Fuchsberg & Fuchsberg, New York City, for Plaintiff–Appellant.

William G. Ballaine, Landman Corsi Ballaine & Ford, New York City, (Lisa S. Rabinowitz, of counsel), for Defendants–Appellees.

Before: KEARSE and CABRANES, Circuit Judges, and KELLEHER, District Judge [*].

JOSÉ A. CABRANES, Circuit Judge:

Plaintiff Dominick Raspente, who brought this personal injury suit against defendants after being struck by a train, appeals from the judgment of the United States District Court for the Southern District of New York (Denny Chin, *Judge*), granting defendants' FED.R.CIV.P. 50 motion for judgment as a matter of law.[1] Plaintiff claims that the district court erred when it concluded that, even viewing the evidence in the light most favorable to plaintiff, no reasonable jury could find that defendants breached their duty to use reasonable care. We agree and therefore vacate the judgment of the district court and remand the cause for a new trial.

## I.

We are mindful that in the circumstances presented we must draw all inferences in favor of plaintiff. The following facts are derived from the testimony at trial. On June 15, 1992, a train owned and operated by defendant National Railroad Passenger Corp., a.k.a. Amtrak ("Amtrak") and driven from New Haven, Connecticut, to Pennsylvania Station in New York by defendant John Springer (jointly, "defendants") struck Raspente. At around dusk, the train, which was roughly eight hundred feet long, had just cleared the Pelham Bay Bridge in The Bronx at 45 m.p.h. and was starting to accelerate around a bend. Springer testified that when the engine at the front of the train was one "catenary length"[2] past the bend, he saw plaintiff standing in the middle of the tracks, approximately six or seven catenary lengths away and began to blow the train's horn repeatedly. According to Springer, he saw plaintiff look up, start to move off the track, but then stop and stand on the ties on the north side of the track. Springer testified that "when [he] realized [plaintiff] was trying to kill himself," he applied the emergency brake. The parties dispute both the distance of the train from plaintiff at the moment Springer realized that plaintiff was not going to move off the track and the length of time Springer took to apply the emergency brake. Plaintiff claims that the train was more than 1000 feet away, a distance at which the engineer, reacting within a few seconds, could apply the brake and stop a train traveling at about 46 miles per hour without hitting plaintiff. Defendants claim that the train was only 600 to 750 feet away from plaintiff and could not have stopped in time regardless of what the engineer had done. In any event, when Springer did apply the brakes, it was

---

[*] The Honorable Robert J. Kelleher, of the United States District Court for the Central District of California, sitting by designation.

[1] FED.R.CIV.P. 50(a) provides that, once a party has been fully heard on an issue, the opposing party may move the court to find against the non-moving party where "there is no legally sufficient evidentiary basis for a reasonable jury to find for [the non-moving party] ... and [the court] may grant a motion for judgment as a matter of law against that party." Rule 50(b) provides for the renewal of the motion for judg-

ment as a matter of law after the jury has returned a verdict. The "court may ... allow the judgment to stand, ... order a new trial, ... or direct the entry of judgment as a matter of law."

[2] The train was powered by electricity. A "catenary" is a metal configuration that holds up the overhead wires that power the trains, and under which the trains travel. There is a suggestion in the record that the catenaries are evenly spaced, but the distance between each pair of catenaries is in dispute.

too late to avoid hitting plaintiff, who suffered extensive injuries.

Plaintiff filed this personal injury action in the Supreme Court for the County of New York, alleging that defendants' negligence caused his injuries. Defendants removed the case to the district court in 1993, on the basis of diversity jurisdiction under 28 U.S.C. § 1332.

There have been two trials of this case in the district court. At the first trial, held from March 25 to April 3, 1996, the parties stipulated that the distance between two catenaries was approximately three hundred feet. In addition to his own testimony and that of Springer, plaintiff presented testimony from an expert witness, George Brunner, who testified that, taking into account the weight and speed of the train, it would take approximately one thousand feet for the train to stop from the place the engineer first applied the emergency brake. An accident investigator also retained by plaintiff, Alan Levine, testified, in substance, that the distance between the two catenaries nearest the accident site was two hundred ninety-nine feet. The jury returned a verdict that found defendants 50% responsible for plaintiff's injuries, but that plaintiff was not entitled to any damages. Stating that it did not "see how the jury could have found no damages," the district court granted plaintiff's motion for a new trial and denied defendants' Rule 50(b) motion.

During the first trial, the district court had reprimanded plaintiff on two occasions for not having his witnesses ready in court to testify. Before the second trial, plaintiff was reminded by the court that if his witnesses were not ready to testify when required, the court would deem plaintiff to have rested his case. At the second trial, defendants refused to enter into a stipulation on the distance between two catenaries. In addition, instead of calling Springer as a witness, plaintiff introduced portions of Springer's pre-trial deposition. When plaintiff informed the district court that his two expert witnesses, Levine and Brunner, were not available or ready to testify, the court informed plaintiff (as promised) that it would regard plaintiff's case as closed, but that it would consider the testimony of Brunner and Levine at the first trial for purposes of deciding defendants' Rule 50 motion.[3] Defendants did not object to the court's use of that prior testimony.[4] Thereafter, the court granted defendants' Rule 50 motion from the bench, and later filed an opinion explaining the basis for the decision, *see Raspente v. National R.R. Passenger Corp.,* 940 F.Supp. 523, 526–27 (S.D.N.Y.1996): Despite assurances given to the parties, the district court did not take into account certain testimony from Brunner and Levine at the first trial that was favorable to plaintiff. The court also relied on Springer's testimony from the first trial, rather than Springer's pre-trial deposition testimony that was admitted into evidence at the second trial. *Raspente,* 940 F.Supp. at 527.

This appeal followed.

## II.

We review *de novo* the district court's order granting a motion for judgment as a matter of law. *Stanford v. Kuwait Airways Corp.,* 89 F.3d 117, 122 (2d Cir. 1996). In reviewing the district court's decision, we "consider the evidence in the light most favorable to the party against whom the motion was made and ... give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence," *Smith v. Lightning Bolt Prods., Inc.,* 861 F.2d 363, 367 (2d Cir.1988), and will affirm the district court's judgment "only if

---

**3.** The district court's memorandum decision of May 6, 1996, refers to FED.R.CIV.P. 50(b), rather than 50(a). Because the motion for judgment as a matter of law came at the close of plaintiff's case, however, subsection 50(a) is the applicable subsection. *See* note 1, *supra.* In any event, the same standard for granting a Rule 50 motion applies under either subsection. *See Sarus v. Rotundo,* 831 F.2d 397, 400 (2d Cir.1987).

**4.** We express no view as to whether or how this case might have turned out differently on appeal if defendants had objected to the district court's decision to rely on testimony from Brunner and Levine at the first trial. Because defendants did not object, we too may, and do, consider that testimony in determining whether the district court erred in granting defendants' motion for judgment as a matter of law.

there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against the moving party." *Stanford,* 89 F.3d at 123 (alterations, internal quotation marks, and citations omitted).

■ Under New York law, a railroad, like any other landowner, owes a duty to exercise reasonable care under the circumstances to persons on its land. *Basso v. Miller,* 40 N.Y.2d 233, 386 N.Y.S.2d 564, 352 N.E.2d 868, 872 (1976). Furthermore, "[i]t is the established ["open-run"] rule in New York ... that when a train engineer sees a person on or near the track, he is not bound to stop his train immediately, but has the right to assume that in broad daylight, the person will see and hear the train, heed the danger, and leave the track." *Alba v. Long Island R.R.,* 204 A.D.2d 143, 611 N.Y.S.2d 196, 197 (1st Dep't 1994) (citing *Chrystal v. Troy & Boston R.R. Co.,* 105 N.Y. 164, 11 N.E. 380, 382 (1887)). Once it becomes apparent to the engineer that the person on the tracks cannot or will not remove himself from harm's way, the engineer has a duty to make an emergency stop. *Alba,* 611 N.Y.S.2d at 197.

The only issue on appeal is whether the facts presented by plaintiff at the second trial, when combined with the testimony presented at the first trial and admitted without objection in the second, were sufficient to defeat defendants' Rule 50 motion.

■ The parties agree that, in the circumstances presented, if the train was less than one thousand feet away from plaintiff at the time that Springer realized that plaintiff was not going to clear the tracks, the undisputed evidence at trial would show that it was physically impossible for the train to stop in time to avoid hitting plaintiff. *See* Brief for Appellant at 11–12; Brief for Appellees at 8.

The question of the distance of the train from plaintiff when Springer realized that plaintiff was not going to move off the railroad ties depends on a determination of the distance between catenaries. On this question, the district court found that

> [t]he only evidence in the record as to the distance between catenaries is Springer's deposition testimony that a catenary length was approximately 150 feet. Alan Levine, plaintiff's investigator who took certain measurements, did not testify as to the distance between catenaries or what a catenary length was.

However, Alan Levine testified at the first trial, in substance, that the distance between the two catenaries nearest the accident site is two hundred ninety-nine feet. Furthermore, although there was no evidence presented at the second trial that the catenaries were evenly spaced, this could reasonably be inferred from Springer's deposition testimony, which was read into the record at the second trial.[5] Accordingly, viewing the evidence in the light most favorable to plaintiff, a jury reasonably could conclude that the catenaries were evenly spaced approximately three hundred feet apart.

Once the distance between catenaries is accepted, the distance of the train from plaintiff when Springer realized or should have realized that plaintiff was not going to move out of the way, could be calculated readily by a jury. In his deposition testimony, Springer stated that the train was "four or five catenaries away" from plaintiff when he saw plaintiff step over the rail, turn around, and stand sideways on the rail ties. Assuming a distance of 300 feet between catenaries, that would mean that the train was 1500 feet away from plaintiff at the relevant time. In other words, a jury reasonably could have concluded, on the basis of the evidence the court ought to have considered on this Rule 50 motion, that plaintiff and the train were

5. The district court stated that the deposition testimony was "mistaken," because it found that Springer's deposition testimony that the entire train was past the bend when Springer first saw plaintiff was inconsistent with his deposition testimony that he was six catenaries away when he first saw him. In fact, Springer testified that *he,* sitting in the train's engine at the front of the train, "had just come around the curve," and not

that the entire train was past the bend. JA 415. Moreover, the court's consideration at the second trial of Springer's testimony from the first trial, instead of Springer's deposition testimony, was error, for the simple reason that the parties did not consent to the use of Springer's testimony at the first trial for purposes of the Rule 50 motion, and the court never alerted counsel to the possible use of this testimony.

1500 feet apart when the engineer realized that plaintiff had stopped moving out of the way.

A reasonable jury then could have concluded that Springer had at least 500 feet in which to engage the brake in order to leave 1000 feet for the train to come to a full stop and thereby avoid hitting plaintiff. Testimony considered by the district court indicates that at 46 m.p.h. it would take about seven seconds for the train to traverse 500 feet. A reasonable jury could have found that Springer was negligent for waiting seven seconds—after he realized that plaintiff was not going to move off the tracks—before applying the emergency brake.[6]

Viewing the evidence, as we must, in the light most favorable to plaintiff, we hold that a reasonable jury could have found that defendants were liable, at least in part, for the accident.

### III.

For the reasons stated above, we conclude that the district court erred in granting defendants' Rule 50 motion for judgment as a matter of law. Accordingly, we vacate the judgment of the court and remand the cause to the district court for a new trial.

---

**6.** In *Clarke v. City of New York,* 50 N.Y.S.2d 333 (N.Y.Sup.Ct.1944), the court set aside a verdict for plaintiff, whose husband had been struck by a subway train, on the ground that the motorman's failure to apply brakes within two seconds after he first saw the decedent was insufficient as a matter of law to sustain the verdict. *Id.* at 334. The New York Court of Appeals reversed and granted a new trial, finding that "the record presents questions of fact as to negligence and contributory negligence." *Clarke v. City of New York,* 295 N.Y. 861, 67 N.E.2d 261 (1946) (per curiam).

In this case, the record also indicates that when the train did eventually stop, it stopped approximately 920 feet (one full train and two car lengths) beyond the site at which plaintiff was struck. That suggests the possibility that the train's brakes were not applied until 80 feet before impact. This would permit an inference that the engineer waited *over 20 seconds* while traveling for 1420 feet at 46 m.p.h., before he applied the emergency brake.