**Nobel BOWEN, Jr., Plaintiff,**

v.

**NATIONAL RAILROAD PASSENGER CORPORATION; and CSX Transportation, Inc., Defendants.**

No. 1:02–CV–1237.

United States District Court, N.D. New York.

March 2, 2005.

E. Stewart Jones, PLLC, Troy, NY (George E. Lamarche, III, of counsel), for plaintiff.

Landman Corsi Ballaine & Ford P.C., New York, NY (James M. Woolsey, III, of counsel), for defendants.

## MEMORANDUM–DECISION and ORDER

HURD, District Judge.

## I. INTRODUCTION

Plaintiff Nobel Bowen ("Bowen" or "plaintiff") brought this tort action against defendants, National Railroad Passenger Corporation a/k/a Amtrak ("Amtrak" or the "railroad") and CSX Transportation, Inc. ("CSX" or "defendants") alleging that he sustained injuries due to their negligence. Defendants move for summary judgment pursuant to Rule 56. Plaintiff opposes. Oral argument was heard in Utica, New York on June 14, 2005. Decision was reserved.

## II. FACTS

On July 14, 2001, Bowen attended a party at a friend's apartment in Castleton, New York. Castleton is small community on the Hudson River that is home to around 1,600 people.[1] Throughout the course of the evening Bowen and six friends consumed an undetermined amount of beer, played cards, and listened to music. After 9:00 plaintiff stepped out behind his friend's apartment and sat in the doorway facing two sets of railroad tracks with his feet on the steps. The tracks were approximately twenty feet away. N.Y. R.R. Law § 83 prohibits persons not associated with the railroad from walking on or along the tracks.

The tracks are owned by CSX which leases the right of way to Amtrak which operates trains over them. While the area was clearly not open to the public, neither were there signs, fences, or barricades announcing the danger of active tracks. Bowen was aware that the tracks were in use, however, as he had heard one pass by earlier in the evening.

While Bowen's memory of the events that followed is unclear, two of his friends testified as to how he came to be in the path of Amtrak Train No. 269. Christopher Soto ("Soto") and Doug June ("June") were out drinking beer with plaintiff near the rear entrance of the apartment when they heard a train approaching around 9:35 p.m. The train's bell was ringing and its headlight was functioning properly. According to procedure, as the train approached the vicinity of the men it sounded its horn in two long blasts, one short blast, and then a long blast.

The northbound train was traveling at 107–108 mph. (The maximum speed allowed there is 110 mph.) June testified that he was standing at the edge of the grass line or on the rocks bordering the tracks as the train approached. Soto testified that both he and Bowen told June to get away from the tracks. Perhaps inebriated, June did not move and plaintiff ran towards the tracks, grabbed June with his left arm, and pulled him away. Plaintiff was struck by the rear portion of the engine. His arm was severed in the accident. He also suffered damage to his left leg and hip, and must use a wheelchair.

The train engineer, saw three people run toward the tracks as the train passed the site, but was unaware that the train struck Bowen until arrived it at the next stop, Albany/Rensselaer Station.

## III. DISCUSSION

### A. Summary judgment standard

Summary judgment is granted only if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); see Celotex Corp. v. Catrett, 477

---

1. Actually, the Census Bureau reported 1,619 Castleton residents in 2000. 2000 U.S. Census Report, U.S. Census Bureau, www.factfinder .census.gov

U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Silver v. City Univ.*, 947 F.2d 1021, 1022 (2d Cir.1991). The court will not try issues of fact on a motion for summary judgment, but, rather, will determine "whether the evidence presents a sufficient disagreement to require submission to a [factfinder] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1060–61 (2d Cir.1995). In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Gibbs–Alfano v. Burton*, 281 F.3d 12, 18 (2d Cir.2002). Thus, "[s]ummary judgment may be granted if, upon reviewing the evidence in the light most favorable to the nonmovant, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Richardson v. Selsky*, 5 F.3d 616, 621 (2d Cir.1993).

A material fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 57 (2d Cir.1997). The Court is "to grant summary judgment where the nonmovant's evidence is merely colorable,

conclusory, speculative or not significantly probative." *Schwimmer v. Kaladjian*, 988 F.Supp. 631, 638 (S.D.N.Y.1997) (citing *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505).

## B. *Jurisdiction*

Federal jurisdiction over this tort action is maintained pursuant to 42 U.S.C. § 1331 as it is applies to federally chartered corporations; and 42 U.S.C. § 1334 which limits that jurisdiction to those corporations in which the United States is the owner of more than one-half of its capital stock. Amtrak was created by an act of Congress and the United States owns more than one-half of its capital stock. *See Eichelberg v. National R.R. Passenger Corp.*, 57 F.3d 1179, 1183 (2d Cir.1995); *see also Union Pacific R. Cases*, 115 U.S. 1, 5 S.Ct. 1113, 29 L.Ed. 319 (1885).

## C. *Negligence*

In order to prove negligence, plaintiff must demonstrate (1) the existence of a legal duty owed to the plaintiff; (2) a breach of that duty; and (3) injury to plaintiff proximately resulting from such a breach. *Leiching v. CONRAIL*, 858 F.Supp. 337, 339 (N.D.N.Y.1994) (citing *Akins v. Glens Falls City School Dist.*, 53 N.Y.2d 325, 338, 441 N.Y.S.2d 644, 424 N.E.2d 531 (N.Y.1981)). Bowen alleges that defendants failed to take proper measures to prevent or alert pedestrians of the potential train hazard. Plaintiff argues that it is reasonably foreseeable that persons would get too close to the tracks at the accident site where there are no posted warning signs or erected fences. Defendants move for summary judgment on the grounds that they did not breach their duty to warn, and do not have a duty to fence the tracks. Defendants also argue that plaintiff's conduct precludes a finding

that they were the proximate cause of his injuries.[2]

Where there is no legal duty, there can be no breach, and therefore no liability in negligence. *Pulka v. Edelman,* 40 N.Y.2d 781, 782, 390 N.Y.S.2d 393, 358 N.E.2d 1019 (N.Y.1976). Thus, "a determination of negligence begins with consideration of the duty owed, which is a matter of policy, rather than with foreseeability." *Sukljian v. Charles Ross & Son Company, Inc.,* 69 N.Y.2d 89, 97, 511 N.Y.S.2d 821, 503 N.E.2d 1358 (1989). The existence and scope of an alleged tortfeasor's duty is, in the first instance, a legal question for determination by the courts. *McCarthy v. Olin Corp.,* 119 F.3d 148, 156 (2d Cir. 1997); *Palka v. Servicemaster Management Servs. Corp.,* 83 N.Y.2d 579, 585, 611 N.Y.S.2d 817, 634 N.E.2d 189 (1994); *Sanchez v. State,* 99 N.Y.2d 247, 252, 754 N.Y.S.2d 621, 784 N.E.2d 675 (N.Y.2002). "Duty is essentially a legal term by which we express our conclusion that there can be liability. It tells us whether the risk to which one person exposes another is within the protection of the law. In fixing the bounds of that duty, not only logic and science, but policy play an important role." *De Angelis v. Lutheran Medical Center,* 58 N.Y.2d 1053, 1055, 462 N.Y.S.2d 626, 449 N.E.2d 406 (N.Y.1983) (citations omitted). As the Second Circuit explained, [i]dentifying the scope of an alleged tortfeasor's duty is not something derived or discerned from an algebraic formula. Rather, it coalesces from vectored forces including logic, science, weighty competing socioeconomic policies and sometimes contractual assumptions of responsibility. New York courts fix the duty point by balancing factors, including the reasonable expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public policies affecting the expansion or limitation of new channels of liability. *Alfaro v. Wal–Mart Stores, Inc.,* 210 F.3d 111, 114 (2d Cir.2000) (citations and quotations omitted).

The role of policy and the balancing of competing interests is related in New York's standard of care imposed on landowners: "A landowner must act as a reasonable man in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk." *Basso v. Miller,* 40 N.Y.2d 233, 241, 386 N.Y.S.2d 564, 352 N.E.2d 868 (N.Y. 1976) (quoting *Smith v. Arbaugh's Restaurant, Inc.,* 469 F.2d 97, 100 (D.C.Cir.1972); *Maheshwari v. City of New York,* 2 N.Y.3d 288, 294, 778 N.Y.S.2d 442, 810 N.E.2d 894 (N.Y.2004)). These factors are considered concurrently with questions of foreseeability. *Basso,* 40 N.Y.2d at 241, 386 N.Y.S.2d 564, 352 N.E.2d 868. The concepts of duty and foreseeability are often confused. "Foreseeability 'is applicable to determine the scope of duty—only after it has been determined that there is a duty.'" *McCarthy,* 119 F.3d 148, 156 (quoting *Pulka,* 40 N.Y.2d at 785, 390 N.Y.S.2d 393, 358 N.E.2d 1019; *Sanchez,* 99 N.Y.2d at 252, 754 N.Y.S.2d 621, 784 N.E.2d 675).

"[A] railroad owes a duty of reasonable care to those on or near a railroad track." *Fuentes v. Conrail,* 789 F.Supp. 638, 640 (S.D.N.Y.1992). While the existence of a duty is easily stated, the scope of that duty is significantly more compli-

**2.** Because defendants' have not breached their duty to warn and do not have a duty to fence they cannot be held liable in negligence and it is not necessary to consider the issue of proximate cause. *Leiching v. CONRAIL,* 901 F.Supp. 95, 99 (N.D.N.Y.1995).

cated. It is obvious to plaintiff, and likely many others, that trains passing at 108 miles per hour through a residential area only yards from back stoops is a danger to local residents. The initial inquiry is what duty does the railroad have to those who are not employees, passengers or otherwise invited to enter the railroad's right of way, but must, or choose to, enter upon its tracks.

■ While New York no longer frames duty of care in terms of the status of the entrant—such as in invitee, licensee, or trespasser—the circumstances under which a person enters another's property is relevant to determining what would be reasonable to impose upon landowners in terms of safety measures. As the New York Court of Appeals stated, "[w]hile status is no longer determinative, considerations of who plaintiff is and what his purpose is upon the land are factors which, if known, may be included in arriving at what would be reasonable care under the circumstances." *Basso,* 40 N.Y.2d at 241, 386 N.Y.S.2d 564, 352 N.E.2d 868. Accordingly, the law has developed such that it recognizes a higher duty of care where the railroad has knowledge of a person's entry and the scope of the duty expands in relation to the knowledge. Knowledge need not be actual but may be imputed through notice of an entrant's presence. *Fuentes,* 789 F.Supp. at 641. As one would expect, the scope of the duty owed contracts where a railroad lacks such knowledge and has a reasonable expectation that persons will not be present on its right of way.

■ The general rule is that the railroad is entitled to use its right of way. Where others must necessarily cross the railroad at road and street crossings—and thus the railroad has knowledge of those who enter—the duty to those who enter and/or approach to enter is articulated in

detail in various state and federal regulations. There are legally prescribed warnings, warning devices, and/or barriers at such crossings. *See e.g.,* 49 C.F.R. § 234.

Despite the miles of tracks that pass through populated areas, trespassers are not presumed to be inevitable entrants and deemed legally anticipated. On the contrary, they are legally sanctioned under N.Y. R.R. Law § 83 which prohibits anyone not associated with the railroad from walking on or along the tracks. Thus, prior to *Basso* when status was still the measuring stick for the duty of care, the Court of Appeals succinctly summarized the law in this area in *Merriman v. Baker* as: "Whoever walks upon, or along, the tracks of a railroad, except when necessary to cross the same upon some street, highway, or public place, violates the law and is like a trespasser, and the company's servants are under no other obligation than to refrain from willfully, or recklessly, injuring him." 34 N.Y.2d 330, 357 N.Y.S.2d 473, 313 N.E.2d 773 (N.Y.1974); *see also Bain v. New York Central Railroad,* 342 F.2d 801 (2d Cir.1965). The duty owed is essentially to announce the passing of trains to allow trespassers to remove themselves from the right of way.

However, knowledge of the presence of trespassers may trigger a greater duty of care anyway. For example, where a private crossing becomes known to the railroad as having the nature of a public crossing, the law imposes a duty to sound a warning. *Hooks v. New York C.R. Co.,* 327 F.2d 259, 262 (2d Cir.1964) (citing *Zambardi v. South Brooklyn Ry. Co.,* 281 N.Y. 516, 24 N.E.2d 312 (1939)); *Lamphear v. New York Cent. & H.R.R. Co.,* 194 N.Y. 172, 86 N.E. 1115 (1909). "[T]he acquiescence of the railroad [to such use] may create a license so as to impose upon the carrier to all persons so crossing a duty to exercise reasonable care." *Carpi-*

*no v. Baker*, 66 A.D.2d 201, 205, 412 N.Y.S.2d 617 (N.Y.App. Div. 1st Dep't 1979). Likewise, when a railroad acquiesces to children playing on railway property, the legal effect of trespassing is less persuasive in limiting the duty of care owed. *Rasmussen v. Palmer*, 134 F.2d 780 (2d Cir.1943)

The duty is also greater if the railroad is actually aware of the presence of a trespasser. "Once it becomes apparent to [an] engineer that the person on the tracks cannot or will not remove himself from harm's way, the engineer has a duty to make an emergency stop." *Raspente v. Amtrak*, 111 F.3d 239, 242 (2d Cir.1997) (citing *Alba v. Long Island R.R.*, 204 A.D.2d 143, 611 N.Y.S.2d 196 (N.Y.App. Div. 1st Dep't 1994)); *Lucas v. New York City Transit Authority*, 163 A.D.2d 21, 557 N.Y.S.2d 919 (N.Y.App. Div. 1st Dep't 1990).

Plaintiff has not argued that defendants had any knowledge of persons on the tracks in the vicinity of the accident either before the date of the incident or in the moment prior to it. Thus it is unnecessary to analyze whether the defendant should have taken any extraordinary measures besides more warning measures and/or efforts to prevent entry.

Defendants emphatically characterize plaintiff as a trespasser. Were it that clear, this case would likely fall into the lot of cases that are decided on proximate cause grounds without ever addressing the issue of the scope of the duty owed. Trespassers, even children, are usually found to be the proximate cause of their own injuries when they enter upon railroad tracks and are harmed by passing trains. *See Mooney v. Long Island R.R.*, 305 A.D.2d 560, 560, 759 N.Y.S.2d 380 (N.Y.App. Div. 2nd Dep't 2003)( children proceeded around a safety gate); *de Pena v. New York City Transit Auth.*, 236 A.D.2d 209,

210, 653 N.Y.S.2d 327 (N.Y.App. Div. 1st Dep't 1997) (13–year–old and friends walking on tracks in subway tunnel); *Gao Yi Feng v. Metro. Transp. Auth.*, 285 A.D.2d 447, 727 N.Y.S.2d 470 (N.Y.App. Div. 2nd Dep't 2001); *Prysock v. Metropolitan Transp. Auth.*, 251 A.D.2d 308, 309, 673 N.Y.S.2d 736 (N.Y.App. Div. 2nd Dep't 1998); *Guller v. Conrail*, 242 A.D.2d 283, 284, 661 N.Y.S.2d 42 (N.Y.App. Div. 2nd Dep't 1997); *Brown v. Long Island R.R.*, 304 A.D.2d 601, 602, 758 N.Y.S.2d 150 (N.Y.App. Div. 2nd Dep't 2003).

The wrinkle in this case is that plaintiff isn't exactly a trespasser. Accepting plaintiff's allegations as true, Bowen entered upon the land only fractions of a second before his injury for the purpose of saving his friend's life. *See Spooner v. Delaware, L. & W.R. Co.*, 115 N.Y. 22, 34, 21 N.E. 696 (N.Y.1889) ( holding that if plaintiff stepped upon the track in the humane effort to save younger children from danger, she was not a trespasser.); *Eckert v. Long Island R. Co.*, 43 N.Y. 502 (N.Y.1871).

The question becomes how the fact that he was not a trespasser in the usual sense effects the railroad's knowledge of his presence and therefore its duty under the circumstances. If not a trespasser, he is at best a foreseeable rescuer to whom the railroad might be liable under the foreseeable rescuer doctrine articulated in New York in *Wagner v. International R. Co.*, 232 N.Y. 176, 180, 133 N.E. 437 (N.Y.1921) ("The railroad company whose train approaches without signal is a wrongdoer toward the traveler surprised between the rails, but a wrongdoer also to the bystander who drags him from the path."); *Guarino v. Mine Safety Appliance Co.*, 25 N.Y.2d 460, 464, 306 N.Y.S.2d 942, 255 N.E.2d 173 (N.Y.1969) But that requires a finding that defendants were negligent in creating the situation that endangered the

person rescued. *Hirschman v. Dry–Dock E.B. & B.R. Co.,* 46 A.D. 621, 61 N.Y.S. 304 (N.Y.App. Div. 1st Dep't 1899). Defendants would no doubt argue that Bowen's friend created his own danger when trespassing on the defendants' tracks. *See Guarino v. Mine Safety Appliance Co.,* 25 N.Y.2d 460, 306 N.Y.S.2d 942, 255 N.E.2d 173 (N.Y.1969). While the rescuing nature plaintiff's entry is relevant to the issue of proximate cause, the difference in duty owed to plaintiff as a rescuer is not expanded beyond what was owed to the one he rescued, a trespasser.

 Turning to that duty, plaintiff argues that defendants were negligent in maintaining the physical circumstances of the scene of the accident. In essence, he argues that in some circumstances, like this one in Castleton, the presence of high speed train travel within communities triggers a higher standard of care than defendants undertook in simply warning those near the tracks of approaching trains through headlights and sounding horns. Since duty is commensurate with knowledge, this would require legally imputing knowledge of anticipated trespassers according to the track's proximity with other structures, and the nature of the community through which the train travels. Plaintiff is unable to provide authority or precedent for imputing such knowledge based on community circumstances. This would require a significant, and undebatably burdensome, expansion of the duty owed considering under current policy the law imposes a greater duty of care only where the railroad has actual knowledge or notice of trespassers and the number of miles of tracks that run through structurally developed and populated communities.

Neither the proximity of the tracks to the apartment building nor the fact that the tracks run through a residential community are in and of themselves sufficient to impute knowledge of inevitable trespassing to raise the standard of care owed above the requirement to warn of passing trains and justify the imposition of the additional safety measures plaintiff seeks.

### 1. *Duty to Warn*

Plaintiff argues that the defendants' warning measures were inadequate considering the circumstances of the accident site. He argues that reasonable care would include posted signs or a barrier of some sort to demarcate an otherwise unobstructed boundary. "While what degree of care is reasonable ordinarily presents a jury question, 'in any negligence case the court must always determine as a threshold matter whether the facts will support an inference of negligence or lack of negligence.'" *Leiching v. CONRAIL,* 858 F.Supp. 337, 339 (N.D.N.Y.1994) (quoting *Scurti v. City of New York,* 40 N.Y.2d 433, 387 N.Y.S.2d 55, 354 N.E.2d 794(Ct.App.1976))

 It is not disputed that Bowen was aware that the train was coming. Plaintiff knew the tracks were in use. The horn sounded and the bell was ringing. The train's light was on. His awareness is affirmed by the fact that he warned his friend to get away from the tracks. No trespassing signs would not have effected his decision to enter upon the tracks. He had already refrained from entering upon the tracks until his friend was in danger. Indeed, it was that awareness of the train that motivated him to enter upon the railroad property. It cannot be said that additional warnings would have had any effect on plaintiff's conduct. *MacDonald v. City of Schenectady,* 308 A.D.2d 125, 128, 761 N.Y.S.2d 752 (N.Y.App. Div. 3rd Dep't 2003) (citing *Liriano v. Hobart Corp.,* 92 N.Y.2d 232, 242, 677 N.Y.S.2d 764, 700 N.E.2d 303 (N.Y.1998); *Leiching v. CONRAIL,* 901 F.Supp. 95, 99

(N.D.N.Y.1995); *Miller v. Town of Fenton,* 247 A.D.2d 740, 669 N.Y.S.2d 391 (N.Y.App. Div. 3rd Dep't 1998)). Defendants did not breach their duty to warn by not placing posted signs at the site in question.

Plaintiff has argued that a barricade of some sort may have been required under the circumstances. While forgoing a detailed analysis of the differences between fences and barricades, it is noted that one purpose of such a construction is to prevent entry altogether, which will be addressed under the duty to fence, and another is to provide a more effective notice of a boundary. The argument that a barricade or other structure that marked the boundary of the tracks was required as part of the duty to warn is weak on the instant facts because the track boundary is clearly marked by the change in land surface at that site. The railroad's right of way is covered in gravel in contrast to the grassy patch behind the apartment where the men gathered.

Any suggestion that the railroad's duty to warn should be extended to include a raised barricade or the like must be considered in light of the burden incurred in such a measure in contrast to the value of the additional information provided. As noted, at the instant site the surface of the land itself denotes the boundary. Defendants did not breach their duty to warn by not providing a barrier to serve as an additional warning mechanism.

### 2. *Duty to Fence*

▮ Absent a statutory requirement, railroad owners do not have a duty to fence their property to prevent trespassing. *Munger v. Tonawanda R. Co.,* 4 N.Y. 349 (N.Y.1850); *McCarthy v. New York, N.H. & H.R. Co.,* 240 F. 602, 605 (2d Cir.1917). New York Railroad Law does include statutes that relate to the fencing

of railroads. The first is part of the General Railroad Act of 1850 and relates to farm animals. N.Y. R.R. Law § 52 requires fencing to "prevent cattle, horses, sheep and hogs from going upon" the tracks. This provision has been construed to apply for the protection of animals only, not humans. *Lefler v. Pennsylvania R. R., Inc.,* 203 Misc. 887, 890, 118 N.Y.S.2d 389 (N.Y.Sup.1952); *Di Caprio v. New York Central R.R. Co.,* 231 N.Y. 94, 131 N.E. 746 (N.Y.1921). The other three statutes were enacted for the protection of people. The commissioner of transportation may require fencing along a railroad's right of way at his or her discretion, in Queen's County, and along tracks that involve an electrified third rail in cities that have more than one million inhabitants. *See* N.Y. R.R. Law § 52–b; N.Y. R.R. Law § 52–c; N.Y. R.R. Law § 52–a (McKinney's 1991).

The common law does not impose a fencing requirement at sites like the one in question in Castleton, and the state legislature and commissioner have declined to impose the burden. While it is clear that statutes do not constitute "the maximum measure of care demanded," exceeding these policy determinations would require extraordinary circumstances not present in the instant case. *Markar v. New York, N.H. & H.R. Co.,* 77 F.2d 282, 284 (2d Cir.1935).

If it were established that railroads had a duty to fence their tracks where they were in close proximity to homes, and running through a community such that trespassing should be anticipated, the facts of this case demonstrate that the burden would be too great to impose in relation to the risk. *Cf., Pulka,* 40 N.Y.2d at 786, 390 N.Y.S.2d 393, 358 N.E.2d 1019. (refusing to find duty in the context of third party actors in near parking garages because there was no logical limit to the duty).

Without undertaking any detailed statistical risk analysis in relation to particular track sites, it is apparent that the risk of human injury would necessarily correlate with the population total and/or density of the community through which the train traveled. Amtrak runs through a multitude of communities with higher populations, and population densities than Castleton with its 1,600 residents. Even if the duty to fence based on such factors was established, it is unlikely that after a mile by mile analysis, that duty would extend to communities as small as Castleton.

## IV. *CONCLUSION*

Defendants did not breach their duty to warn plaintiff of the passing train by not posting signs or erecting a barricade. Defendants did not have a duty to fence their railroad tracks to prevent trespassing, and thus the rescue such trespass might invite.

Accordingly, it is

ORDERED that

1. Defendants' motion for summary judgment is GRANTED.

2. The complaint is DISMISSED.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.